## POWELL *v.* NEVADA

No. 92–8841.   Argued February 22, 1994—Decided March 30, 1994

GINSBURG, J., delivered the opinion of the Court, in which BLACKMUN, STEVENS, O'CONNOR, SCALIA, KENNEDY, and SOUTER, JJ., joined. THOMAS, J., filed a dissenting opinion, in which REHNQUIST, C. J., joined, *post,* p. 85.

*Michael Pescetta* argued the cause and filed briefs for petitioner.

*Dan M. Seaton* argued the cause and filed a brief for respondent.

*Miguel A. Estrada* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Days, Assistant Attorney General Harris,* and *Deputy Solicitor General Bryson.*\*

JUSTICE GINSBURG delivered the opinion of the Court.

In *Gerstein* v. *Pugh,* 420 U. S. 103 (1975), we held that the Fourth Amendment's shield against unreasonable seizures requires a prompt judicial determination of probable cause following an arrest made without a warrant and ensuing detention. *County of Riverside* v. *McLaughlin,* 500 U. S. 44 (1991), established that "prompt" generally means within 48 hours of the warrantless arrest; absent extraordinary circumstances, a longer delay violates the Fourth Amendment. In the case now before us, the Supreme Court of Nevada stated that *McLaughlin* does not apply to a prosecution commenced prior to the rendition of that decision. We hold that the Nevada Supreme Court misread this Court's precedent: "[A] . . . rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, . . . not yet final" when the rule is announced. *Griffith* v. *Kentucky,* 479 U. S. 314, 328 (1987).

---

\*Briefs of *amici curiae* urging affirmance were filed for the State of Utah et al. by *Jan Graham,* Attorney General of Utah, *Carol Clawson,* Solicitor General, and *J. Kevin Murphy,* Assistant Attorney General, *Grant Woods,* Attorney General of Arizona, *John M. Bailey,* Chief State's Attorney of Connecticut, *Robert A. Marks,* Attorney General of Hawaii, *Larry EchoHawk,* Attorney General of Idaho, *Robert T. Stephan,* Attorney General of Kansas, *Chris Gorman,* Attorney General of Kentucky, *Richard P. Ieyoub,* Attorney General of Louisiana, *Scott Harshbarger,* Attorney General of Massachusetts, *Joseph P. Mazurek,* Attorney General of Montana, *Fred DeVesa,* Attorney General of New Jersey, *Susan B. Loving,* Attorney General of Oklahoma, *Lee Fisher,* Attorney General of Ohio, and *T. Travis Medlock,* Attorney General of South Carolina; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger.*

## I

Petitioner Kitrich Powell was arrested on Friday, November 3, 1989, for felony child abuse of his girlfriend's 4-year-old daughter, in violation of Nev. Rev. Stat. § 200.508 (1991). That afternoon, the arresting officer prepared a sworn declaration describing the cause for and circumstances of the arrest. Not until November 7, 1989, however, did a Magistrate find probable cause to hold Powell for a preliminary hearing. That same day, November 7, Powell made statements to the police, prejudicial to him, which the prosecutor later presented at Powell's trial. Powell was not personally brought before a Magistrate until November 13, 1989. By that time, the child had died of her injuries, and Powell was charged additionally with her murder.

A jury found Powell guilty of first-degree murder and, following a penalty hearing, sentenced him to death. On appeal to the Nevada Supreme Court, Powell argued that the State had violated Nevada's "initial appearance" statute by failing to bring him before a magistrate within 72 hours, and that his conviction should therefore be reversed.

The Nevada statute governing appearances before a magistrate provides:

> "If an arrested person is not brought before a magistrate within 72 hours after arrest, excluding nonjudicial days, the magistrate:
>
> "(a) Shall give the prosecuting attorney an opportunity to explain the circumstances leading to the delay; and
>
> "(b) May release the arrested person if he determines that the person was not brought before a magistrate without unnecessary delay." Nev. Rev. Stat. § 171.178(3) (1991).

Powell emphasized that 10 days had elapsed between his arrest on November 3, 1989, and his November 13 initial appearance before a Magistrate. In view of the incriminating

statements he made on November 7, Powell contended, the unlawful delay was prejudicial to him. Under Nevada law, Powell asserted, vindication of his right to a speedy first appearance required that his conviction be reversed, and that he be set free. Appellant's Opening Brief in No. 22348 (Nev.), p. 85.

The district attorney maintained before the Nevada Supreme Court that there had been no fatal violation of Nevada's initial appearance statute. First, the district attorney urged, the confirmation of probable cause by a Magistrate on November 7 occurred within 72 hours of the November 3 arrest (excluding the intervening weekend). This probable-cause finding, the district attorney contended, satisfied the 72-hour prescription of Nev. Rev. Stat. § 171.178. In any event, the district attorney continued, under Nevada law, an accused waives his right to a speedy arraignment when he voluntarily waives his right to remain silent and his right to counsel. Powell did so, the district attorney said, when he made his November 7 statements, after he was read his *Miranda* rights and waived those rights. See Respondent's Answering Brief in No. 22348 (Nev.), pp. 56–60. In reply, Powell vigorously contested the district attorney's portrayal of the probable-cause determination as tantamount to an initial appearance sufficient to satisfy Nev. Rev. Stat. § 171.178's 72-hour prescription. Powell pointed out that he "was neither present [n]or advised of the magistrate's finding." Appellant's Reply Brief in No. 22348 (Nev.), p. 1.

The Nevada Supreme Court concluded, in accord with the district attorney's assertion, that Powell had waived his right under state law to a speedy arraignment. 108 Nev. 700, 705, 838 P. 2d 921, 924–925 (1992). If the Nevada Supreme Court had confined the decision to that point, its opinion would have resolved no federal issue. But the Nevada Supreme Court said more. Perhaps in response to the district attorney's contention that the Magistrate's November 7 probable-cause notation satisfied Nev. Rev. Stat. § 171.178 (a

contention the State now disavows), the Nevada Supreme Court, *sua sponte*, raised a federal concern. That court detoured from its state-law analysis to inquire whether the November 3 to November 7, 1989, delay in judicial confirmation of probable cause violated the Fourth Amendment under this Court's precedents.

*County of Riverside* v. *McLaughlin*, 500 U. S. 44 (1991), the Nevada Supreme Court recognized, made specific the probable-cause promptness requirement of *Gerstein* v. *Pugh*, 420 U. S. 103 (1975); *McLaughlin* instructed that a delay exceeding 48 hours presumptively violates the Fourth Amendment. Merging the speedy initial appearance required by Nevada statute and the prompt probable-cause determination required by the Fourth Amendment, the Nevada Supreme Court declared: "The *McLaughlin* case renders [Nev. Rev. Stat. §]171.178(3) unconstitutional insofar [as] it permits an initial appearance up to seventy-two hours after arrest and instructs that non-judicial days be excluded from the calculation of those hours." 108 Nev., at 705, 838 P. 2d, at 924. While instructing that, henceforth, probable-cause determinations be made within 48 hours of a suspect's arrest, the Nevada Supreme Court held *McLaughlin* inapplicable "to the case at hand," because that recent precedent postdated Powell's arrest. 108 Nev., at 705, n. 1, 838 P. 2d, at 924, n. 1. *McLaughlin* announced a new rule, the Nevada Supreme Court observed, and therefore need not be applied retroactively. 108 Nev., at 705, n. 1, 838 P. 2d, at 924, n. 1.

Powell petitioned for our review raising the question whether a state court may decline to apply a recently rendered Fourth Amendment decision of this Court to a case pending on direct appeal. We granted certiorari, 510 U. S. 811 (1993), and now reject the state court's prospectivity declaration.

## II

Powell's arrest was not validated by a magistrate until four days elapsed. That delay was presumptively unreason-

able under *McLaughlin*'s 48-hour rule. The State so concedes. Appellee's Answer to Petition for Rehearing in No. 22348 (Nev.), p. 7; Tr. of Oral Arg. 28. The State further concedes that the Nevada Supreme Court's retroactivity analysis was incorrect. See *ibid.* We held in *Griffith* v. *Kentucky*, 479 U. S., at 328, that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith* stressed two points. First, "the nature of judicial review . . . precludes us from '[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule.'" *Id.*, at 323 (quoting *Mackey* v. *United States*, 401 U. S. 667, 679 (1971) (Harlan, J., concurring in judgment)). Second, "selective application of new rules violates the principle of treating similarly situated defendants the same." *Griffith, supra*, at 323. Assuming, *arguendo*, that the 48-hour presumption announced in *McLaughlin* qualifies as a "new rule," cf. *Teague* v. *Lane*, 489 U. S. 288, 299–310 (1989), *Griffith* nonetheless entitles Powell to rely on *McLaughlin* for this simple reason: Powell's conviction was not final when *McLaughlin* was announced.

It does not necessarily follow, however, that Powell must "be set free," 108 Nev., at 705, n. 1, 838 P. 2d, at 924, n. 1, or gain other relief, for several questions remain open for decision on remand. In particular, the Nevada Supreme Court has not yet closely considered the appropriate remedy for a delay in determining probable cause (an issue not resolved by *McLaughlin*), or the consequences of Powell's failure to raise the federal question, or the district attorney's argument that introduction at trial of what Powell said on November 7, 1989, was "harmless" in view of a similar, albeit shorter, statement Powell made on November 3, prior to his arrest. See Brief for Respondent 22. Expressing no opin-

ion on these issues,* we hold only that the Nevada Supreme Court erred in failing to recognize that *Griffith* v. *Kentucky* calls for retroactive application of *McLaughlin*'s 48-hour rule.

*  *  *

For the reasons stated, the judgment of the Nevada Supreme Court is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, with whom THE CHIEF JUSTICE joins, dissenting.

After concluding that the Nevada Supreme Court erred by failing to follow our decision in *Griffith* v. *Kentucky,* 479 U. S.

---

*JUSTICE THOMAS would reach out and decide the first of these questions, though it is not presented in the petition for review. He would rule inappropriate "suppression of [Powell's November 7] statement . . . because the statement was not a product of the *McLaughlin* violation." *Post,* at 89. It is "settled law," he maintains, *post,* at 88, that if probable cause in fact existed for Powell's detention, then *McLaughlin*'s 48-hour rule, though violated, triggers no suppression remedy. Quite the opposite, JUSTICE THOMAS recognizes, is "settled law" regarding search warrants: A court's postsearch validation of probable cause will not render the evidence admissible. See *Vale* v. *Louisiana,* 399 U. S. 30, 35, 34 (1970) (absent circumstances justifying a warrantless search, it is "constitutional error [to] admi[t] into evidence the fruits of the illegal search," "even though the authorities ha[d] probable cause to conduct it").

JUSTICE THOMAS maintains, however, that our precedents, especially *New York* v. *Harris,* 495 U. S. 14 (1990), already establish that no suppression is required in Powell's case. In *Harris,* we held that violation of the Fourth Amendment's rule against warrantless arrests in a dwelling, see *Payton* v. *New York,* 445 U. S. 573 (1980), generally does not lead to the suppression of a postarrest confession. But Powell does not complain of police failure to obtain a required arrest warrant. He targets a different constitutional violation—failure to obtain authorization from a magistrate for a significant period of pretrial detention. Whether a suppression remedy applies in that setting remains an unresolved question. Because the issue was not raised, argued, or decided below, we should not settle it here.

314 (1987), the Court remands this case without deciding whether the ultimate judgment below, despite the error, was correct. In my view, the lower court's judgment upholding petitioner's conviction was correct under settled legal principles, and therefore should be affirmed.

## I

The petition for certiorari in this case presented a single question for review—namely, whether a particular decision of this Court concerning criminal procedure should apply retroactively to all cases pending on direct review. This question was well settled at the time the petition was filed, and had been since our decision in *Griffith*, in which we stated that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." 479 U. S., at 328. The Nevada Supreme Court made a statement to the contrary in a footnote in its opinion. See *infra*, at 87. Notwithstanding this obvious mistake, *Griffith*'s rule of retroactivity had generated little or no confusion among the lower courts. In my view, under these circumstances, the writ was improvidently granted.

According to this Court's Rule 10.1, "[a] petition for a writ of certiorari will be granted only when there are special and important reasons therefor." Not only were there no special or important reasons favoring review in this case, but, as Justice Stewart once wrote: "The only remarkable thing about this case is its presence in this Court. For the case involves no more than the application of well-settled principles to a familiar situation, and has little significance except for the [parties]." *Butz* v. *Glover Livestock Commission Co.*, 411 U. S. 182, 189 (1973) (dissenting opinion). As the Court has observed in the past, "it is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the

parties, and in cases where there is a real and embarrassing conflict of opinion and authority between the circuit courts of appeal." *Layne & Bowler Corp.* v. *Western Well Works, Inc.,* 261 U. S. 387, 393 (1923). We make poor use of judicial resources when, as here, we take a case merely to reaffirm (without revisiting) settled law. See generally *Estelle* v. *Gamble,* 429 U. S. 97, 115 (1976) (STEVENS, J., dissenting); *United States* v. *Shannon,* 342 U. S. 288, 294–295 (1952) (opinion of Frankfurter, J.).

Now that we have invested time and resources in full briefing and oral argument, however, we must decide how properly to dispose of the case. The Court vacates and remands because the Nevada Supreme Court erred, not in its judgment, but rather in its "prospectivity declaration." *Ante,* at 83. The "declaration" to which the Court refers is the state court's statement that our decision in *County of Riverside* v. *McLaughlin,* 500 U. S. 44 (1991), does "not apply retroactively." 108 Nev. 700, 705, n. 1, 838 P. 2d 921, 924, n. 1 (1992). The Court correctly rules that *McLaughlin* does apply retroactively. See *Griffith, supra.* Rather than remanding, I believe that the Court in this instance can and should definitively resolve the case before us: "Our job . . . is to review judgments, not to edit opinions . . . ." *Phillips Petroleum Co.* v. *Shutts,* 472 U. S. 797, 823 (1985) (STEVENS, J., concurring in part and dissenting in part). See also *K mart Corp.* v. *Cartier, Inc.,* 485 U. S. 176, 185 (1988); *Black* v. *Cutter Laboratories,* 351 U. S. 292, 297 (1956).

Of course, when there is a need for further factfinding or for proceedings best conducted in the lower courts, or where the ultimate question to be decided depends on debatable points of law that have not been briefed or argued, we regularly determine that the best course is to remand. See, *e. g.,* *Pierce* v. *Underwood,* 487 U. S. 552, 574 (1988) (vacating award of attorney's fees and remanding for recalculation of fee award). Those concerns, however, do not require a remand in this case. In defense of the judgment below, re-

spondent and its *amici* have properly raised a number of arguments, see *Blum* v. *Bacon,* 457 U. S. 132, 137, n. 5 (1982), which have been fully briefed. As I explain below, at least one of those arguments provides a ground for decision that would require only the application of settled law to the undisputed facts in the record before us. Under these circumstances, remanding will merely require the needless expenditure of further judicial resources on a claim that lacks merit.

## II

While in petitioner's care on November 2, 1989, 4-year-old Melea Allen suffered massive head and spinal injuries. When petitioner took her to the hospital the following day, November 3, she was comatose and suffering respiratory failure. Petitioner told doctors and nurses that she had fallen from his shoulders during play. When emergency room personnel discovered that Melea also had numerous bruises and lacerations on her body—injuries that suggested she had been abused repeatedly—they called the police. Petitioner spoke to the officers who responded to the call and again explained that the child's injuries were the result of an accidental fall.

Several hours later, the police arrested petitioner for child abuse. Within an hour of the arrest, officers prepared a declaration of arrest that recited the above facts to establish probable cause. Petitioner was still in custody on November 7, when, after receiving *Miranda* warnings, he agreed to give a second statement to the police. He repeated the same version of events he had given at the hospital before his arrest, but in slightly more detail. On that same day, a Magistrate, relying on the facts recited in the declaration of arrest described above, determined that petitioner's arrest had been supported by probable cause. The next day Melea died, and petitioner was charged with first-degree murder.

Petitioner contends that respondent's delay in securing a prompt judicial determination of probable cause to arrest

him for child abuse violated the rule that a probable-cause determination must, absent extenuating circumstances, be made by a judicial officer within 48 hours of a warrantless arrest. *McLaughlin, supra.* The *McLaughlin* error, petitioner argues, required suppression of the custodial statement he made on November 7, which was introduced against him at trial.

Against that argument, respondent and its *amici* raise several contentions: first, that suppression of evidence would never be an appropriate remedy for a *McLaughlin* violation; second, that the statement at issue here was not a product of the *McLaughlin* error, or at least that the connection between the *McLaughlin* violation and the statement is so attenuated that suppression is not required; third, that suppression is inappropriate under *Illinois* v. *Krull,* 480 U. S. 340 (1987), because the officers acted in good-faith reliance on a state statute that authorized delays of up to 72 hours (excluding weekends and holidays) in presenting a defendant to a magistrate; and finally, that even if the statement should have been suppressed, admitting it at trial was harmless error. Even assuming, *arguendo,* that suppression is a proper remedy for *McLaughlin* errors, see *ante,* at 85, n., I believe that, on the facts of this case, suppression of petitioner's statement would not be appropriate because the statement was not a product of the *McLaughlin* violation.

Our decisions make clear "that evidence will not be excluded as 'fruit' [of an unlawful act] unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Segura* v. *United States,* 468 U. S. 796, 815 (1984). As *Segura* suggests, "but for" causation is a necessary, but not sufficient, condition for suppression: "[W]e have declined to adopt a *per se* or but for rule that would make inadmissible any evidence . . . which somehow came to light through a chain of causation that began with a [violation of the Fourth or Fifth Amendment]." *New York* v. *Harris,* 495 U. S. 14, 17

(1990) (internal quotation marks omitted). See also *United States* v. *Ceccolini*, 435 U. S. 268, 276 (1978).

Contrary to petitioner's arguments, the violation of *McLaughlin* (as opposed to his *arrest* and *custody*) bore no causal relationship whatsoever to his November 7 statement. The timing of the probable-cause determination would have affected petitioner's statement only if a proper hearing at or before the 48-hour mark would have resulted in a finding of no probable cause. Yet, as the Magistrate found, the police had probable cause to suspect petitioner of child abuse, cf. *Illinois* v. *Gates*, 462 U. S. 213 (1983), and there is no suggestion that the delay in securing a determination of probable cause permitted the police to gather additional evidence to be presented to the Magistrate. On the contrary, the Magistrate based his determination on the facts included in the declaration of arrest that was completed within an hour of petitioner's arrest. Thus, if the probable-cause determination had been made within 48 hours as required by *McLaughlin*, the same information would have been presented, the same result would have obtained, and none of the circumstances of petitioner's custody would have been altered.

Moreover, it cannot be argued that the *McLaughlin* error somehow made petitioner's custody unlawful and thereby rendered the statement the product of unlawful custody. Because the arresting officers had probable cause to arrest petitioner, he was lawfully arrested at the hospital. Cf. *Harris, supra,* at 18.[1] The presumptively unconstitutional delay in

---

[1] The fact that the arrest was supported by probable cause and was not investigatory in nature fully distinguishes this case from our decisions in *Taylor* v. *Alabama,* 457 U. S. 687 (1982), *Brown* v. *Illinois,* 422 U. S. 590 (1975), and *Dunaway* v. *New York,* 442 U. S. 200 (1979). Where probable cause for an arrest is lacking, as it was in each of those cases, evidence obtained as a result of the Fourth Amendment violation "bear[s] a sufficiently close relationship to the underlying illegality [to require suppression]." *New York* v. *Harris,* 495 U. S. 14, 19 (1990). The presence of probable cause, by contrast, validates the arrest and attendant custody, despite "'technical' violations of Fourth Amendment rights" that may

securing a judicial determination of probable cause during a period of lawful custody did not render that custody illegal. We have never suggested that lawful custody becomes unlawful due to a failure to obtain a prompt judicial finding of probable cause—that is, probable cause does not disappear if not judicially determined within 48 hours. Cf. *United States* v. *Montalvo-Murillo*, 495 U. S. 711, 722 (1990) ("[A] person does not become immune from detention because of a timing violation").

In short, the statement does not even meet the threshold requirement of being a "product" of the *McLaughlin* violation.[2] Petitioner's statement, "while the product of an ar-

_____

have occurred during either. *Brown, supra,* at 611 (Powell, J., concurring in part). See also *Harris, supra,* at 18 (holding that even though the police violated the rule of *Payton* v. *New York,* 445 U. S. 573 (1980), by arresting a suspect in his house without a warrant, the resulting custody was lawful because the arrest was supported by probable cause, and that therefore the suspect's subsequent custodial statement was admissible).

As the Court notes, *ante,* at 85, n., a different rule applies to search warrants. In that context, we have insisted that, absent exigent circumstances, police officers obtain a search warrant, even if they had probable cause to conduct the search, see, *e. g., Coolidge* v. *New Hampshire,* 403 U. S. 443, 454–455 (1971), and we have required suppression of all fruits of an unlawful search, unless an exception to the exclusionary rule applies. See generally *Illinois* v. *Krull,* 480 U. S. 340, 347–349 (1987). The same rule has not been applied to arrests. "[W]hile the Court has expressed a preference for the use of arrest warrants when feasible, it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." *Gerstein* v. *Pugh,* 420 U. S. 103, 113 (1975) (citations omitted). Nor has the Court required suppression of voluntary custodial statements made after an arrest supported by probable cause based solely on the officers' failure to obtain a warrant. See *Harris, supra.* Petitioner's statement was the product of his arrest and custody, and there is no reason to think that the rules we have developed in the search warrant context should apply in this case.

[2] Thus, conventional attenuation principles are inapplicable in this case, for as we pointed out in *Harris,* "attenuation analysis is only appropriate where, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal governmental activity.'" 495 U. S., at 19 (quoting *United States* v. *Crews,* 445 U. S. 463, 471 (1980)).

92

rest and being in custody, was not the fruit of the fact" that a judicial determination of probable cause was not made within the 48-hour period mandated by *McLaughlin*. *Harris, supra*, at 20. Under these circumstances, suppression is not warranted under our precedents.

\* \* \*

For the foregoing reasons, the judgment below should be affirmed.

I respectfully dissent.