**UNITED STATES of America, Plaintiff,**

v.

**Eduardo LEAL, Defendant.**

No. 94–20034.

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

Feb. 6, 1995.

---

Eric M. Schwing, Babette P. Salus, Schwing & Salus P.C., Springfield, IL, for Eduardo Leal.

## ORDER ON MOTIONS TO SUPPRESS

BAKER, Senior District Judge.

Eduardo Leal and three other defendants, Felix Ernesto Solis, Ignasio Ramirez, and Raul Garza Tijerina, are charged with conspiracy to possess and to distribute more than 100 kilograms of marijuana. Solis is a fugitive and Ramirez and Tijerina have entered guilty pleas and are awaiting sentencing.

Leal has moved the court to suppress the statements he made to Illinois State Police Sergeant Robert Bodemer [1] at 2:30 a.m. on November 19, 1994 at the police station in Bradley Illinois. As grounds, Leal says his rights under the Fourth Amendment were violated by the police who did not take him before a magistrate for a probable cause hearing until 72 hours after his arrest. As an additional ground for suppression, Leal says that his arrest in Hoffman Estates was without probable cause.

### FACTS

Solis, Ramirez and Tijerina entered into transactions with Sgt. Bodemer, acting in an under cover capacity, for the sale of large quantities of marijuana. Three meetings, November 2, November 9 and November 18, took place in Kankakee County between Bodemer and Solis, Ramirez and Tijerina. Delivery of some marijuana was made and arrangements for further sales were negotiated.

Ramirez and Tijerina were arrested at 2:30 p.m. on November 18, 1994 after their third drug transaction with Bodemer. Following their arrests, Ramirez and Tijerina made statements to the police about a stash house, 4485 Harbor Circle, Hoffman Estates, Cook County Illinois, that was used in connection with their drug business. Through surveillance of Solis, Ramirez and Tijerina, the police were aware of the connection between

Richard C. Kelly, Kelly & Kelly Ltd., Hebron, IL, for Ignasio Ramirez.

Richard C. Kelly, Kelly & Kelly Ltd., Hebron, IL, Charles L. Bretz, Joliet, IL, for Raul Garza Tijerina.

1. Sgt. Bodemer is a member of a police narcotics task force, the Kankakee Metropolitan Enforcement Group.

Solis, Ramirez, Tijerina and the Harbor Circle address. The police had observed the three confederates visit that address prior to the delivery of marijuana to Bodemer in Kankakee County. The police inferred that the residence at Harbor Circle was where the three had warehoused the marijuana. Sgt. Bodemer relayed that information to cooperating police officers from the DuPage Metropolitan Enforcement Group (DUMEG) who were maintaining surveillance on the Harbor Circle address.

The DUMEG officers during their wait outside 4485 Harbor Circle observed activity involving a pick-up truck and a gray van. The van and pick-up were in the driveway outside the garage with people moving around but the police could not see what the people were doing. The pick-up truck belonged to the defendant Leal, and the police had observed Leal come and go from the residence during the days they maintained surveillance. Leal resided in the Harbor Circle home with his aunt and uncle and cousin. The police had no first hand knowledge about Leal or his activities, and his name was never mentioned by Solis, Ramirez or Tijerina in their dealings with Sgt. Bodemer.[2]

At about 3:55 p.m. the police observed Leal and two other persons come out of the residence. Leal got into his pick-up; the other two got into the van; and both vehicles drove away together. The DUMEG agents following in unmarked cars requested the Hoffman Estates police to effect a traffic stop on the pick-up and the van. Marked squad cars on patrol from the Hoffman Estates police department joined the DUMEG cars following the pick-up and van. The marked cars turned on their emergency lights and the pick-up and the van pulled over immediately.

A marked squad car driven by Hoffman Estates police officer Douglas Zboril stopped behind Leal's truck. A DUMEG car stopped in front of Leal, effectively trapping his pick-up. Officer Zboril "exited" his squad car, drew his service weapon and ordered Leal

out of the pick-up with his hands up and to put his hands on the truck. Leal was searched and handcuffed. He had no weapons but the police officer felt a soft, crinkly package in Leal's jacket that later was identified as marijuana. The truck was searched and no contraband was found.[3]

The court finds that Leal was taken from the truck at gun point. Officer Zboril testified that he held his gun out at an angle with the muzzle pointed down. Leal testified that the police had their guns drawn and pointing at him. At least that was his perception of what was taking place. The court believes Leal's account is more accurate than that of the police officer.

Leal was transported to the Hoffman Estates police station where Inspector Barber of the Illinois State Police gave him *Miranda* warnings and obtained a written waiver of rights. But no statements were taken from Leal at that time. Neither was he charged or a warrant secured for his arrest. Two agents from the Drug Enforcement Administration appeared on the scene. They put Leal in the back of their government van and transported Leal to the police station at Bradley, in Kankakee County, Illinois. Leal was handcuffed and in custody on the ride to Bradley although there was no charge made against him in Hoffman Estates and no warrant secured for his arrest.

Leal was interviewed by Sgt. Bodemer at the Bradley police station at 2:30 a.m. and was asked for a statement. He was warned about his *Miranda* rights and signed a written waiver. He then made an incriminating statement about transporting cannabis from Texas to Chicago in October, 1994. Sgt. Bodemer wrote the statement out and Leal signed it. *See,* Government Exhibit # ?. During the period of time between his arrest and his meeting with Bodemer, there is no evidence of serious mistreatment of Leal. His handcuffs were uncomfortable, he says, because of a pre-existing injury. Leal says that Bodemer treated him well. The Hoffman Estates police may have shoved Leal

2. Ramirez and Tijerina never mentioned Leal to the court during their Rule 11 plea hearings.

3. The van and its occupants were seized and searched in a fashion similar to Leal. No contraband was found and the two occupants and the van apparently were released.

around a bit but nothing extreme or outrageous took place.

Leal was booked into the Kankakee County Jail in the early morning of November 18, 1994. The Holiday Court Disposition Order, dated November 19, 1995, Government Exhibit #2, shows a charge of "Conspiracy/Man/Del/ of Cannabis" although no warrant was issued and no complaint filed. It is uncontested that Leal was not taken before the Kankakee County judge who held Holiday Court. A check mark on the exhibit in the space labeled "Probable Cause Found" is the only indication of a judicial determination of probable cause for Leal being in custody. According to the testimony of Kankakee County Assistant States Attorney, Frank Astrella, he told the judge what evidence there was against Leal. The judge checked the probable cause box on the form, set no bail, in fact made no effort to determine a reasonable bail, and signed the form. Leal continued to be held in the Kankakee County jail.

On November 21, 1994, law enforcement officers appeared before United States Magistrate Judge Charles H. Evans in Springfield, Illinois and swore to a criminal complaint charging seven individuals, including the four defendants in this case, with conspiracy to possess and to distribute in excess of 100 kilograms of marijuana.[4] The magistrate judge found probable cause existed for Leal's arrest and issued a warrant for his arrest. An initial appearance for Leal was then held before Judge Evans. Leal was advised of his constitutional rights, an attorney was appointed to represent him and Leal was detained pending trial.

## DISCUSSION

The motions raise two Fourth Amendment issues: (1) was Leal arrested without probable cause; and (2) Was Leal given a timely, independent, judicial determination of probable cause for his detention?

### I.

In *United States v. Burns*, 37 F.3d 276 (7th Cir.1994), the court considered the question of whether the defendant was under arrest when she made certain incriminating statements.

A person is in custody ... if that person is either formally arrested or has suffered "a restraint on freedom of movement" of the degree associated with a formal arrest. (citations omitted).

In determining whether a suspect is in custody, courts look at "how a reasonable man in the suspect's position would have understood the situation. (citations omitted). This determination is based on the "totality of the circumstances." (citation omitted). "The accused's freedom to leave the scene and the purpose, place and length of interrogation are all relevant factors in making this determination." (citations omitted).

*Id.* at 280.

The government conceded in oral argument that the police did not have probable cause to arrest Leal when he came out of his residence. The police had no information that Leal had committed or was in the process of committing a crime. The government argues, however, that Leal was not arrested until after marijuana was discovered on his person and that the police made a permissible *Terry* stop, not an arrest. In support of its argument the government relies upon *United States v. Serna–Barreto*, 842 F.2d 965 (7th Cir.1988). A comparison of the facts of this case with those present in *Serna–Barreto* shows that the argument is without merit.

In *Serna–Barreto* a police officer, acting alone at night, stopped a car with two suspects known by police from prior experience to be drug dealers. Serna–Barreto tried to grab an important piece of evidence away from the officer who detained her. In Leal's case five or six police officers, in daylight, stopped Leal's vehicle. Leal made no resistance or attempt to escape. The police had no information about Leal that would have led them reasonably to believe that he was armed or dangerous. Sgt. Bodemer's dealings with Solis, Ramirez and Tijerina certainly did not support such a suspicion.

4. Apparently, the three additional individuals charged were Leal's aunt, uncle and cousin. However, that is not certain from the record. The grand jury did not indict those three.

None of the extreme conditions that led the reluctant *Serna–Barreto* court to find that a pointed firearm was not tantamount to an arrest are present here. Leal was ordered out of his pick-up at gun point and put up against the side of the truck. No reasonable person under those circumstances would have believed that he was free to leave or that the police just wanted to engage in conversation. Leal was under arrest and to say he wasn't is simply nonsense. As the court observed in *Serna–Barreto*, "It would be a sad day for the people of the United States if police had carte blanche to point a gun at each and every person of whom they had an "articulable suspicion" of engaging in criminal activity." *Id.* at 967.

▪ ■ The appropriate remedy for arrest without a warrant and without probable cause is well established. Evidence obtained as the fruit of an illegal arrest must be suppressed. *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Dunaway v. New York*, 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The need to suppress the evidence obtained by the illegal arrest is made more compelling by the additional Fourth Amendment violations by the police in failing promptly to take Leal before a magistrate.

## II.

It is uncontested that Leal was arrested in one venue and transported to another without a probable cause hearing or formal complaint. In that second venue without a probable cause hearing or formal charge, Leal was interrogated and information was obtained that the police felt could link Leal to the Solis, Ramirez, Tijerina conspiracy on which the police had very strong evidence.[5] Leal was then held, again without formal charge or a probable cause hearing, for a crime he allegedly committed in the second venue not in the first venue where he had been arrested.

The government argues that the Holiday Court exhibit from Kankakee County supports a finding of an independent, judicial determination of probable cause. Granted, an independent, judicial determination of probable cause need not have all the trappings of a full adversarial proceeding. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). A Kankakee County Assistant States Attorney testified that he told the Holiday Court Judge what evidence there was against Leal. But to determine probable cause, "The standard is the same as that for arrest." *Gerstein*, 420 U.S. at 120, 95 S.Ct. at 866. A probable cause determination for the issuance of an arrest warrant would have affidavits or testimony to support it. The only record this court has before it is a form with a check mark on it.

All that discussion avoids the real question of why was there no probable cause hearing in Cook County or the federal Northern District of Illinois? Leal was arrested in Cook County for a crime he allegedly committed there. There was no independent, judicial determination of probable cause for that arrest. Instead, Leal was transported to Kankakee where he was interrogated and information elicited for charging him with a crime in Kankakee County or the federal Central District of Illinois.

■■ The government has the burden of showing why it delayed in securing an independent determination of probable cause. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49. The government has not borne that burden here. In fact, the court concludes that the delay was for the purpose of gathering additional information to justify the arrest (Bodemer's interrogation of Leal at 2:20 a.m. in Kankakee County). That is a reason specifically prohibited by *McLaughlin*. 500 U.S. at 56, 111 S.Ct. at 1670.

*Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) made clear that failure to obtain an independent, judicial determination of probable cause is a Fourth Amendment violation. *County of Riverside*

---

5. Whether that link is supportable remains to be determined. The statement by Leal about his activities in October 1994 are not clearly persua- sive of his connection to the Solis, Ramirez and Tijerina conspiracy in November.

*v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) teaches that the determination of probable cause generally must be made within 48 hours. *Powell v. Nevada,* ⸺ U.S. ⸺, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994) points out that the question of what remedy is appropriate for this type of Fourth Amendment violation has yet to be decided by the Court. *Id.* at ⸺, 114 S.Ct. at 1283–84. It seems clear that in this case the remedy should be suppression of the evidence obtained during the unwarranted delay. The defendant's arrest was without probable cause and nothing intervened between the arrest and the interrogation by Sgt. Bodemer to break the causal relationship of the statement and the illegal arrest. More important, it is clear to the court that the delay in obtaining a judicial validation of the arrest and Leal's transportation to a different venue was to gain time to seek additional information. *Cf. United States v. Alvarez–Sanchez,* ⸺ U.S. ⸺, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994) (delay did not lead to suppression where the delay in going before a magistrate was preceded by a valid arrest).

## CONCLUSION

Both for violation of the defendant's Fourth Amendment rights to be free from unreasonable seizures and to have an independent, judicial determination of probable cause without unreasonable delay, the defendant's motions to suppress are granted. The defendant's statement to Sgt. Bodemer and the pound of marijuana taken from his person at the time of his arrest are both suppressed. The government may not introduce that statement or the pound of marijuana against Leal in its case in chief.