# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

## Nos. 99-2206EA, 99-3128EA, 99-3358EA, 99-3674EA, 99-3803EA, 99-4194EA, 00-1135EA

_____

|  |  |  |
|---|---|---|
| _____ | * | |
|  | * | |
| No. 99-2206EA | * | |
| _____ | * | |
|  | * | |
| United States of America, | * | |
|  | * | |
| Appellee, | * | |
|  | * | |
| v. | * | |
|  | * | |
|  | * | |
| Debra Nicholson, | * | On Appeal from the United |
|  | * | States District Court |
| Appellant, | * | for the Eastern District |
|  | * | of Arkansas. |
|  | * | |
| _____ | * | |
|  | * | |
| No. 99-3128EA | * | |
| _____ | * | |
|  | * | |
| United States of America, | * | |
|  | * | |
| Appellee, | * | |
|  | * | |
| v. | * | |
|  | * | |
|  | * | |
| Rodney Dewayne Floyd, | * | |
|  | * | |
| Appellant, | * | |

_____

No. 99-3358EA

_____

United States of America,

        Appellee,

v.

Donald R. Miller, also known as
Donnie Miller,

        Appellant,

_____

No. 99-3674EA

_____

United States of America,

        Appellee,

v.

Frankie Webb,

        Appellant,

On Appeal from the United
States District Court
for the Eastern District
of Arkansas.

-2-

_____

No. 99-3803EA

_____

United States of America,

      Appellee,

v.

Marcus Deshun Sanders,

      Appellant,

           On Appeal from the United
           States District Court

_____        for the Eastern District
           of Arkansas.

No. 99-4194EA

_____

United States of America,

      Appellee,

v.

Maurice Jerome McDonald,

      Appellant,

-3-

_____

No. 00-1135EA

_____

United States of America,

            Appellee,

      v.

Jamo Jenkins, also known as
Jaymo Jenkins,

            Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On Appeal from the United
States District Court
for the Eastern District
of Arkansas.

_____

Submitted:  September 13, 2000
Filed:  November 1, 2000

_____

Before RICHARD S. ARNOLD, LAY, and FAGG, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

The following defendants were convicted of the following offenses for their involvement in an Arkansas drug conspiracy:  Debra Nicholson, of conspiracy to launder money in violation of 18 U.S.C. § 1956; Rodney Dewayne Floyd, of conspiracy to distribute controlled substances, 21 U.S.C. § 846, and of unlawful use of a telephone to facilitate a drug transaction, 21 U.S.C. § 843(b); Donald R. Miller, of aiding and abetting the distribution of cocaine base, 21 U.S.C. § 841; Frankie Webb, of possessing cocaine base with the intent to distribute, 21 U.S.C. § 841, and of

possessing a firearm during a drug offense, 18 U.S.C. § 924(c)(1); Maurice Jerome McDonald, of conspiracy to distribute controlled substances, 21 U.S.C. § 846, of two counts of distributing cocaine base, 21 U.S.C. § 841, and of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2); Jamo Jenkins, of conspiracy to distribute controlled substances, 21 U.S.C. § 846, and of possessing cocaine base with the intent to distribute, 21 U.S.C. § 841; and Marcus Sanders, of conspiracy to distribute controlled substances, 21 U.S.C. § 846.

On appeal, these seven defendants raise various issues. Ms. Nicholson claims that the District Court erred in not accepting the government's recommendation of probation. Mr. Floyd argues that the evidence against him did not warrant a conspiracy conviction, disputes his classification as a career offender, and appeals from the denial of a motion to exclude evidence. Mr. McDonald and Mr. Jenkins, among other things, challenge their sentences under Apprendi v. New Jersey, 120 S. Ct. 2348 (2000). Mr. Miller raises a sufficiency-of-the-evidence argument and appeals from the denial of a sentence reduction. Mr. Sanders questions the calculation of his criminal history score, and Mr. Webb attacks the sentencing disparity between offenses involving crack and those involving powder cocaine. We hold that Apprendi requires the resentencing of defendants McDonald (except for the life sentence for crack distribution) and Jenkins. In all other respects, we affirm the judgments of the District Court.

I.

Defendant Debra Nicholson appeals from the District Court's denial of a motion for reconsideration of her sentence. She contends that she should have been given probation, as her lawyer requested and the government recommended, instead of fifteen months' imprisonment followed by three years of supervised release. We affirm.

On the basis of the facts stated in her presentence report, adopted in full by the Court below and not challenged on appeal, Ms. Nicholson was liable under the

Sentencing Guidelines to be imprisoned for anywhere from three years and one month to three years and ten months. In accordance with Ms. Nicholson's Plea Agreement, however, and in exchange for her service as a government witness, the United States filed a motion under U.S.S.G. § 5K1.1 recommending probation.

At Ms. Nicholson's sentencing hearing, her attorney requested that she receive probation rather than imprisonment because of her status as a single mother. The District Judge first noted that Ms. Nicholson had twice previously received probation. He then asked Ms. Nicholson's pretrial officer, Mr. McAuley, how she had performed in pretrial and presentencing release:

> MR. MCAULEY: Judge, she has been supervised in California, and simply put, she's done horrible.
>
> THE COURT: Like how? Don't make broad, conclusory statements. Does she – has she ever missed any of her appointments?
>
> MR. MCAULEY: She's missed numerous appointments.
>
> THE COURT: What do you call "numerous"?
>
> MR. MCAULEY: She's missed at least 16 appointments.
>
> THE COURT: What?
>
> MR. MCAULEY: Yes, Your Honor.
>
> THE COURT: You've got to be kidding me. Sixteen? I don't think I've ever had anybody that missed 16.
>
> MR. MCAULEY: According to the probation officer up there in California, they have not had anyone else that has been that noncompliant under their supervision.

Sentencing Tr. at 13. A chronological record of Ms. Nicholson's interactions with the United States Pretrial Services Office for the Central District of California was admitted without objection.

The Court then turned to the government's request for a downward departure from the sentencing range based on Ms. Nicholson's assistance to the prosecution. After determining the extent of that assistance, the Court had the following exchange with Mr. Harris, the Assistant United States Attorney:

THE COURT: What sort of a downward departure do you request?

MR. HARRIS: Judge, in the plea agreement we signed, I agreed if she provided substantial assistance and I filed a motion, I would ask the Court for probation, and I'm going to stick by my agreement.

THE COURT: What does the knowledge of her pretrial conduct, what effect does that have?

MR. HARRIS: If I didn't have this plea agreement, I wouldn't make the recommendation of probation.

THE COURT: Thank you.

Sentencing Tr. at 16.

Ms. Nicholson claims that the conversation just quoted amounts to a breach of her plea agreement under United States v. Mitchell, 136 F.3d 1192, 1994 (8th Cir. 1998). In Mitchell, the government undercut its own motion for downward departure by suggesting at the sentencing hearing that the defendant had already been rewarded at the indictment phase and by introducing damaging statements from the victims of the defendant's crime. At Ms. Nicholson's hearing, by contrast, Mr. Harris merely gave a

candid response to a question from the Court. This was not improper. We have said that the government, after making a motion for downward departure pursuant to a plea agreement, may "advise the sentencing court if there are unrelated factors . . . that in the government's view should preclude or severely restrict any downward departure relief." United States v. Anzalone, 148 F.3d 940, 942 (8th Cir. 1998). Here, Mr. Harris did not go even that far.

Ms. Nicholson points out that at the time of her plea agreement, she had already missed eleven Pretrial Services appointments. She argues that the United States Attorney's failure to raise the issue at that time led her to believe that those absences would not affect the sentence she would receive. She does not, however, direct us to any evidence that the United States Attorney (as opposed to the Pretrial Services Office) actually knew of her delinquency when the plea agreement was struck. We find no such evidence in the record. Moreover, the Court was authorized to find that Ms. Nicholson missed five drug screens even after the date of her plea agreement.

Ms. Nicholson asserts, however, that the District Court actually considered the missed appointments that occurred before the plea bargain. Even if she is right, we see no error. We know of no law that says a court must ignore relevant evidence at a sentencing hearing simply because that evidence may relate to conduct that preceded a defendant's plea agreement. Whether to approve or reject a plea agreement is a matter confided to the sound discretion of the trial court, United States v. Petty, 600 F.2d 713, 714 (8th Cir. 1979) (per curiam), and the defendant here can point to no abuse of discretion. Ms. Nicholson actually received a downward departure of more than 50 per cent. off the bottom end of her sentencing range in spite of conduct on pretrial release that the District Court described as "awfully near contemptuous." Courts are not required to ignore such conduct at sentencing. Ms. Nicholson's sentence is affirmed.

II.

Mr. Floyd raises several arguments on appeal. First, he claims that he was entitled to a directed verdict of acquittal on the conspiracy charge. This argument is without merit. There was testimony that Mr. Floyd bought a kilogram of cocaine from co-conspirator Ricky Rogers for $25,000, Tr. 770-71, that he repeatedly bought nine-ounce quantities of crack from co-conspirator Clinton Lewis at about $700 per ounce, Tr. 439-40, 431, and that people who buy crack in that quantity are typically reselling it, Tr. 431. Moreover, the government introduced tapes of two telephone conversations in which Mr. Floyd discussed drug transactions with members of the conspiracy. Ex. 24-27, 24-51; Tr. 1357, 1406-07. This evidence, if the jury believed it, would support a conviction for conspiracy to distribute controlled substances.

Second, Mr. Floyd contends that the District Court erred in classing him as a career offender under U.S.S.G. § 4B1.1. He argues that one of the two prior felony convictions on which that categorization was based occurred during the course of the present conspiracy and therefore should not count toward career-offender status. We find no error. Mr. Floyd was convicted of the relevant state offense in February, 1997. Neither side has presented any evidence that he was involved in the present conspiracy earlier than August, 1997. The jury's general verdict implicating him in a conspiracy that began in 1994 does not prove when his own involvement began. We affirm the District Court's finding that Mr. Floyd was a career offender.

Mr. Floyd also argues that the District Court erred in denying his motion to exclude wiretap evidence. The judge who issued the wiretap order allowed the government to wait until indictment before giving the statutorily required notice to non-targeted persons whose telephone calls were intercepted under the order. Mr. Floyd asserts that this was illegal on various grounds. We do not decide that question, because even if he is right, he has not shown – or even argued – that the postponement of notice caused him any actual harm. See United States v. Davis, 882 F.2d 1334,

1344 (8th Cir. 1989) (government's failure to give notice under 18 U.S.C. § 2518(8)(d) did not warrant suppression of evidence where defendant was not prejudiced by it), cert. denied, 494 U.S. 1027 (1990).

Mr. Floyd also objects to a jury instruction and claims that the District Court erred in defining "cocaine base" for the jury. These arguments are wholly without merit and do not warrant discussion.

### III.

Mr. McDonald appeals from the denial of two motions: one to limit testimony pursuant to Fed. R. Evid. 403, and one challenging the sufficiency of the evidence at trial to establish the offenses for which he was indicted. We affirm these decisions of the Court below. We agree with Mr. McDonald, however, that Apprendi requires that his sentence be vacated.

Mr. McDonald's evidentiary motion sought to limit testimony concerning his possession of a firearm in connection with his drug offense. The police arrested Mr. McDonald during a raid on his home. They found him sitting on his bed in the dark, holding a .45-caliber pistol, which they shot from his hand. At trial, Mr. McDonald's counsel moved to restrict the officers' testimony to the fact that Mr. McDonald was seen holding a firearm at the time the warrant was served. He argued that any testimony to the effect that he had threatened the officers with the weapon would be irrelevant; alternatively, he claimed that its relevance would be outweighed by its prejudicial effect. See Fed. R. Evid. 403.

Mr. McDonald opened the door to the witness box by refusing to stipulate to his possession of the firearm. Of course he had a right to refuse. In doing so, however, he decided to let the issue be tried upon the officers' testimony, and he cannot now

object to the fact that they gave a full and continuous narrative rather than merely reciting the content of the rejected stipulation.

> A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard.

Old Chief v. United States, 519 U.S. 172, 189 (1997). The Court's denial of Mr. McDonald's evidentiary motion was not an abuse of discretion. See United States v. Rabins, 63 F.3d 721 (8th Cir. 1995) (standard of review).

Mr. McDonald next argues that the District Court erred in denying his motion for acquittal, which was based on an alleged variance between the indictment and the evidence at trial. According to Mr. McDonald, the evidence failed to reveal a complete "wheel conspiracy": specifically, he claims that, although many defendants along the "spokes" of the wheel demonstrably conspired in drug activity with "hub" defendant Steven Miller, substantial evidence does not connect each of the "spoke" defendants with the others. Such a claim warrants a reversal "if the evidence does not support the single conspiracy and the defendant was prejudiced by the variance between the indictment and the proof." United States v. Pullman, 187 F.3d 816, 821 (1999), cert. denied, 120 S. Ct. 802 (2000).

Even if other defendants at the periphery were unaware of each other's activities, however, substantial evidence places Mr. McDonald in the thick of things. Steven Miller, who is Mr. McDonald's cousin, testified that Mr. McDonald and William Wadlington were among his main distributors. Tr. 292, 297-98. Clinton Lewis corroborated that statement. Tr. 435. There was testimony that numerous other defendants were introduced to Miller by McDonald or to McDonald by Miller. Tr.

-11-

213, 654, 797. Sharon Wrobleski testified that, using plane tickets provided by Miller, she and another defendant picked up drugs in California and delivered them to Wadlington at Mr. McDonald's house. Tr. 660-61. Norman Miller testified that he delivered large quantities of cocaine and marijuana to Mr. McDonald for Steven Miller. Tr. 633-35, 640. Giving the jury's verdict the benefit of all reasonable inferences from the facts, United States v. McCarthy, 97 F.3d 1562, 1570 (8th Cir. 1996), we cannot say that Mr. McDonald has suffered an "unwarranted imputation of guilt from others' conduct," Kotteakos v. United States, 328 U.S. 750, 777 (1946). In short, even assuming that the evidence at trial failed to establish that there was only one conspiracy, Mr. McDonald has not shown that this variance was prejudicial to him.

Mr. McDonald's final issue on appeal relates to his sentence. The jury returned general verdicts convicting him of conspiracy to distribute controlled substances, of two counts of crack-cocaine distribution, and of being a felon in possession of a firearm. The indictment did not specify the amount of drugs involved in the conspiracy, nor did the jury make any express finding of quantity as to that count. On these facts, the sentence Mr. McDonald could receive for his conspiracy conviction is limited to 20 years. See 21 U.S.C. § 841(b)(1)(C), 21 U.S.C. § 846. Moreover, the government concedes that one of the charged instances of distribution actually involved 15 pounds of marijuana, not 15 ounces of crack as alleged in Count 46 of the indictment. The maximum sentence for distributing 15 pounds of marijuana is five years. 21 U.S.C. § 841(d). The other distribution charge involved two ounces of crack, for which the statutory sentencing range is ten years to life. 21 U.S.C. § 841(b)(1)(A).

The trial court found by a preponderance of the evidence that Mr. McDonald was connected with more than 150 kilograms of cocaine. Given that quantity and type of drug, the Court arrived at a base offense level of 38. That level went up to 43 after adjustments for possession of a firearm and for a supervisory role in the offense. An offense level of 43 mandates a life sentence. Apprendi was decided after the District Court imposed the sentences in this case. Indeed, Apprendi was decided after Mr.

-12-

McDonald's appellate brief had been filed. The case, however, does apply to the present appeal. The government has raised no procedural impediments to our considering the issue, and, in any event, a new rule of constitutional criminal procedure is normally applied retroactively to all cases pending on direct review. Griffith v. Kentucky, 479 U.S. 314, 328 (1987); Powell v. Nevada, 511 U.S. 79, 80 (1994).

We have no doubt that Apprendi does require resentencing on the conspiracy count and on one of the distribution counts. As we have noted, the statutory maximum for conspiracy, where the jury makes no finding of quantity, is 20 years, and the statutory maximum for distributing 15 pounds of marijuana is five years. The sentences on those two counts, then, need to be modified accordingly. As to the other distribution charge, however, the one involving two ounces of crack, the statutory sentencing range is 10 years to life. The Court was authorized to make findings by a preponderance of the evidence in order to apply the Guidelines. The offense level of 43, which is not claimed to be erroneous, mandates a life sentence for this offense. This is true whatever happens to the other counts. At the oral argument, the Court discussed with counsel the possibility of remanding for resentencing on all counts, but we do not see that there is any need for a remand for reconsideration of the life sentence on the crack-distribution count. That sentence stands on its own even after full consideration of the Apprendi issue, and we see no benefit that Mr. McDonald could receive from a remand. Accordingly, the life sentence on the conspiracy and marijuana-distribution counts is vacated and remanded for resentencing. The life sentence on the crack-distribution count is affirmed.

Mr. McDonald also received a 20-year sentence for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). The statutory maximum sentence for that offense is ten years, not twenty as stated in the presentence report and in the District Court's sentencing order. 18 U.S.C. § 924(a)(2). Mr. McDonald's sentence on this count must therefore be vacated and redetermined along with the others.

IV.

Before considering Mr. Jenkins's arguments on the merits, we must determine whether we have jurisdiction of his case. Shortly after the District Court entered a judgment in Mr. Jenkins's case, he filed a motion that we construe as a motion to set aside his sentence under 28 U.S.C. § 2255. The District Court ruled on that motion some months later, after which point Mr. Jenkins filed a notice of appeal. The notice of appeal was filed within the 60-day time period prescribed in Rule 11 of the Rules Governing Section 2255 Proceedings. Although Mr. Jenkins neglected to appeal his conviction directly, we properly have jurisdiction over the instant appeal from his § 2255 motion. This does not preclude our applying Apprendi,[1] because Mr. Jenkins has not previously collaterally attacked his sentence. Cf. Rodgers v. United States, 229 F.3d 704, 706 (8th Cir. 2000) (Apprendi does not apply retroactively to a second or successive § 2255 motion).

Mr. Jenkins argues that both his conviction and his sentence were illegal. We begin with his conviction. Contrary to Mr. Jenkins's position, the evidence at trial did authorize the jury to conclude that he conspired to distribute cocaine and marijuana. There was testimony that he bought cocaine and marijuana for resale from co-defendants Clinton Lewis, William Wadlington, and Maurice McDonald, Tr. 438, 441-42, 1576-77, and that he introduced co-defendant Ricky Rogers to McDonald, Tr. 762. The government introduced numerous tapes of drug-related telephone calls between William Wadlington and someone whom Lewis, having heard the tapes, identified as Mr. Jenkins. Tr. 1582-1585. Clinton Lewis was a party to one of these calls. Tr.

_____

[1]The United States did not contend, either on brief or at the oral argument, that Mr. Jenkins's Apprendi argument was not cognizable in a § 2255 petition. In particular, the government did not, at that time, argue that the Apprendi point would be barred by Teague v. Lane, 489 U.S. 288 (1989). Whether an Apprendi argument is Teague-barred thus remains an open question in this Circuit.

1585. This evidence would support the inference that Mr. Jenkins conspired with these people to distribute drugs.

There was also sufficient evidence to uphold the jury's general verdict that Mr. Jenkins violated 21 U.S.C. § 841(a) by possessing a controlled substance with the intent to distribute. The jury heard a taped telephone conversation in which a person identified as Mr. Jenkins discussed a recent drug purchase with William Wadlington. Clinton Lewis, whom the Court allowed to interpret the slang-filled conversation for the jury, testified that Wadlington and Jenkins were discussing a purchase of nine ounces of cocaine. Tr. 1583. He also said that the language of the conversation would have been consistent with a purchase of nine ounces of marijuana. Tr. 1586-88. For purposes of the general verdict, it does not matter which substance the jury believed Mr. Jenkins possessed.

For sentencing, however, it matters a great deal. The jury was instructed that it could find that Mr. Jenkins violated § 841(a) even if it found "that the controlled substance distributed was not cocaine base, but another controlled substance, either cocaine, marijuana, or PCP."[2] Tr. 2066. We cannot rule out the possibility that the jury followed this instruction and convicted Mr. Jenkins on a finding of marijuana distribution even though his indictment alleged cocaine base. Mr. Jenkins's conspiracy conviction suffers from the same ambiguity. Assuming that the jury based both of its guilty verdicts upon a finding that Mr. Jenkins conspired to possess, did possess, and intended to distribute nine ounces of marijuana, he would be subject to a maximum sentence of five years on each count. See 21 U.S.C. §§ 841(b)(1)(D), 846.

Mr. Jenkins is entitled to that assumption. We held in United States v. Nattier that, where a jury renders a general verdict that may rest on any of several alternative

_____

[2]This instruction was correct, notwithstanding Mr. Jenkins's argument to the contrary.

-15-

factual findings, the court "should sentence the defendant on the alternative that yields a lower sentencing range."   127 F.3d 655, 661 (1997).   Under the Supreme Court's decision in <u>Edwards v. United States</u>, <u>Nattier</u> no longer applies to cases where the verdict's ambiguity affects only the judge's application of the Sentencing Guidelines within the limits provided by statute.  See 523 U.S. 511, 513-14 (1998).  But <u>Edwards</u> does not affect a case where different statutory maximums might apply.  See <u>Edwards</u>, 523 U.S. at 515 (limiting holding to sentences that do not exceed statutory maximum); <u>Apprendi</u>, 120 S. Ct. at 2366 n.21 (distinguishing <u>Edwards</u>).  As to a case such as that – and Mr. Jenkins has one – <u>Nattier</u> is still good law.

The District Court in the present case rightly noted that the rule in <u>Nattier</u> had an exception where the evidence supported a specific finding beyond a reasonable doubt.  For example, in <u>Nattier</u> itself, the defendant's unambiguous conviction for money laundering justified sentencing him for conspiracy to commit money laundering, despite the ambiguity of the jury's general verdict on his conspiracy count.  127 F.3d at 661.  In Mr. Jenkins's case, however, the jury made no such unambiguous finding.  Instead the District Judge decided, on the strength of the evidence, that the jury must have accepted Mr. Jenkins's connection with over 1.5 kilograms of crack, and on that basis he applied the statutory sentencing range appropriate to that kind and quantum of drugs.  Sentencing Tr. at 16.  We disagree with this analysis.  To the extent that the <u>Nattier</u> exception authorized a judge, rather than a jury, to find the facts that determine a defendant's statutory maximum penalty, it does not survive <u>Apprendi</u>.  "The judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury.  Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were [for the Sixth Amendment's framers] by definition 'elements' of a separate legal offense."  <u>Apprendi</u>, 120 S. Ct. at 2359 n.10.

Mr. Jenkins's case must be, and is, remanded for resentencing.  On remand, his sentence of imprisonment must fall within the statutory maximum of five years for each of his convictions.

V.

The remaining defendants may be considered together.

Mr. Miller raises a sufficiency-of-the-evidence argument regarding his conviction for aiding and abetting the distribution of cocaine base. He admits, however, that he telephoned his brother, Tommy Miller, in order to help Calvin Woodruff arrange a crack purchase. The jury was presented with six tape recordings of conversations between Mr. Miller and his brother regarding the transaction, Ex. 25-81, 25-83, 25-85, 25-86, 25-87, 25-91; Tr. 602-608, and three tapes of conversations between Mr. Miller and Mr. Woodruff, Ex. 25-80, 25-84, 25-82; Tr. 616-620. Mr. Miller's argument appears to be that he was not present at the actual sale. But even if he wasn't, the jury could have found that he aided and abetted it. See United States v. Atkins, 473 F.2d 308 (government had a submissible case for aiding and abetting against defendant who arranged but was not present at transaction), cert. denied, 412 U.S. 931 (1973). Mr. Miller also argues that his minimal involvement justifies a downward departure from his sentencing range. The District Court considered exercising its discretion to grant a downward departure but declined to do so. We cannot review that decision. United States v. Shaw, 162 F.3d 1166 (table), 1998 WL 480182 (8th Cir. 1998) (per curiam).

Mr. Sanders claims that the District Court erroneously calculated his criminal history category by adding two points for each of three state felony convictions. According to Mr. Sanders, the three convictions should have been counted as one under U.S.S.G. § 4A1.2(a)(2), because they were informally consolidated for sentencing. Where prior convictions are sentenced under separate docket numbers, and there is no formal order of consolidation, the convictions are counted separately for purposes of § 4A1.2(a)(2). United States v. Townsend, 94 F.3d 649 (table), 1996 WL 457956 (8th Cir. 1996) (per curiam).

Mr. Webb argues that the sentencing disparity between offenses involving crack and those involving powder cocaine violates the Due Process and Equal Protection clauses of the 14th Amendment. This Circuit has already considered and rejected that argument. United States v. Buckner, 894 F.2d 975 (8th Cir. 1990).

## VI.

For the reasons stated above, the sentences of Mr. McDonald for conspiracy, marijuana distribution, and being a felon in possession of a firearm are vacated, and these sentences are remanded for reconsideration. Mr. McDonald's life sentence for crack distribution is affirmed. Mr. Jenkins's sentences are vacated and remanded with directions as stated above. The convictions and sentences of the remaining defendants are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.