Steven Howard OKEN, Petitioner,

v.

Eugene NUTH, et al., Respondents.

No. Civ. PJM 97–585.

United States District Court,
D. Maryland.

Aug. 30, 1999.

Fred Warren Bennett, Bennett & Nathans, LLP, Greenbelt, MD, Christopher M. Davis, Davis & Davis, Washington, DC, for Petitioner.

Ann N. Bosse, Gwynn X. Kinsey, Jr., Baltimore, MD, for Respondents.

## OPINION

MESSITTE, District Judge.

Steven Howard Oken, an inmate under sentence of death by the State of Maryland, has petitioned the Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. He seeks a new trial or resentencing. The Court will deny the Petition.

### I.

On January 18, 1991, a jury in the Circuit Court for Baltimore County found Oken guilty of first-degree murder, first-degree sexual offense, burglary, and use of a handgun in a crime of violence. The convictions were based on the November 1, 1987 shooting and assault of Dawn Garvin. On January 22, 1991, Baltimore County Circuit Judge James T. Smith, fol-

lowing a bench trial, found Oken criminally responsible for Garvin's murder. On January 25, 1991, the jury that had convicted Oken sentenced him to death.[1] On September 17, 1992, the Maryland Court of Appeals affirmed the murder, sexual offense, and handgun convictions, as well as the death sentence.[2] *Oken v. State,* 327 Md. 628, 612 A.2d 258 (1992) (hereinafter "Oken I"). On May 5, 1994, the Circuit Court for Baltimore County (Levitz, J.) denied Oken's petition for post-conviction relief. On June 13, 1996, the Court of Appeals affirmed the post-conviction decision. *Oken v. State,* 343 Md. 256, 681 A.2d 30 (1996) (hereinafter "Oken II"). On July 25, 1996, it denied Oken's Motion for Rehearing. On January 13, 1997, the United States Supreme Court denied Oken's Petition for a Writ of Certiorari. Oken's Petition for Writ of Habeas Corpus in this Court was filed on February 27, 1997.

Oken was also convicted of two other murders that are relevant to this proceeding. On April 21, 1989, he entered a conditional plea pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to charges of first-degree murder, robbery with a firearm, and theft in the Superior Court of Maine (York County) based on the November 16, 1987 murder of Lori Ward. His conviction and sentence of life imprisonment without parole were affirmed by the Supreme Judicial Court of Maine on February 9, 1990. On April 23, 1991, Oken also pleaded guilty in the Circuit Court for Baltimore County to the November 15, 1987 murder of Patricia Hirt, his sister-in-law. Additional facts will be discussed in the course of addressing Oken's various claims of error.

## II.

In his petition to this Court, Oken asserts several grounds for requesting relief.

Though not argued by him in this sequence, his arguments may be chronologically grouped as follows:

A) Error of the trial court at the pretrial stage;

B) Errors of the trial court at the guilt/innocence stage;

C) Ineffective assistance of counsel at the guilt/innocence stage;

D) Error of the trial court at the criminal responsibility stage;

E) Errors of the trial court at the sentencing stage;

F) Ineffective assistance of counsel at the sentencing stage;

G) Ineffective assistance of counsel at the appellate stage; and

H) Error of the trial court at the post-conviction stage.

The Court will discuss Oken's arguments in this sequence with the understanding that the sequence does not necessarily reflect the relative importance Oken assigns to each argument.

## III.

The Court begins by establishing the general standards that guide its review. These depend on whether the Maryland Court of Appeals did or did not address the legal questions raised in this Court.

A) If the Maryland Court of Appeals addressed the questions, then—since Oken filed his petition after enactment of the Antiterrorism and Effective Death Penalty Act of 1991 (AEDPA)—AEDPA's deferential standards of review apply.[3] Per the AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody

---

1. Judge Smith subsequently imposed sentences of life, 20 years consecutive, and 20 years consecutive for the first-degree sex offense, burglary, and handgun offenses respectively.

2. The burglary conviction was vacated.

3. Oken's writ was filed on February 27, 1997, after the April 26, 1996 effective date of the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Green v. French,* 143 F.3d 865, 868 (4th Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999).

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp.1998).

■ The Fourth Circuit has interpreted subsection (1) to prohibit the issuance of the writ unless (a) the state court decision is in "square conflict" with Supreme Court precedent which is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.*

■ B) If the Maryland Court of Appeals did not adjudicate Oken's federal constitutional claims on the merits, the standards contained in 28 U.S.C. § 2254(d) do not apply. But if the state court has relied on Oken's noncompliance with a state procedural rule to preclude review of a claim and if that rule constitutes an adequate and independent ground for denying relief, federal review of the claim

will also be barred, subject to a cause and prejudice exception. *Coleman v. Thompson*, 501 U.S. 722, 749, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).[4]

■ A state rule is "adequate" if "firmly established," *see James v. Kentucky*, 466 U.S. 341, 348, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984), and regularly and consistently applied by the state court. *See Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). It is "independent" if it does not "depend on a federal constitutional ruling." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The cause-and-prejudice exception will be discussed further *infra.*

C) If the state court bases its dismissal both on an adequate and independent state fault ground and on the merits, federal habeas review of the claim is foreclosed. *Skipper v. French*, 130 F.3d 603, 609 (4th Cir.1997).

## IV.

### *Error of the Trial Court at the Pre-Trial Stage*

■ Oken seeks to raise two Fourth Amendment issues. He contends first that the trial court erred when it denied his motion to suppress evidence seized from his home where law enforcement officers entered the home without a warrant and where, according to Oken, no exigent circumstances existed. He also challenges the ruling of the trial court denying him standing to assert a Fourth Amendment violation where law enforcement officers searched his motel room in Maine allegedly before he had checked out.

The State response is that these claims are not cognizable and are otherwise insufficient under 28 U.S.C. § 2254(d).

4. There is a "miscarriage of justice" exception to the cause and prejudice exception which is tied to a petitioner's claim of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Oken makes no claim of actual innocence in this case.

*Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), holds that federal habeas relief is not available to redress Fourth Amendment exclusionary rule violations if the petitioner was accorded an "opportunity for full and fair litigation" of the Fourth Amendment issue in the state courts. *Id.* at 494, 96 S.Ct. 3037. There is no question that Oken had a full and fair opportunity to litigate his Fourth Amendment issues in Maryland's courts. The trial court held a pre-trial hearing and made findings of fact sufficient to enable the Maryland Court of Appeals to consider all claims fully and fairly on appeal, all essential components of the Fourth Amendment claim were addressed, and the Court of Appeals' legal and factual conclusions were not clearly wrong. *See Boggs v. Bair,* 892 F.2d 1193, 1199–1200 (4th Cir.1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990).

The Court of Appeals reasonably evaluated the facts in light of the evidence presented. As for the initial entry into Oken's home, the investigating officer had been called to the premises by Oken's sister-in-law who was concerned that another of Oken's sisters-in-law, Patricia Hirt, was missing. She reported to the police that the door to Oken's house was ajar, the house was in disarray, and blood was on the floor near the entry of the house. "[H]er call to the police suggested that she obviously desired some sort of police assistance in this regard." *Oken I,* 327 Md. at 646, 612 A.2d at 266.[5]

As for the search of the Maine hotel room, ample evidence justified the Court of Appeals' conclusion that Oken had abandoned the motel room (*e.g.* he had left it and already rented another motel room in another Maine city) and that the incriminating items seized would inevitably have been discovered (*e.g.* when the maids came in the morning to make up the room). *Oken I,* 327 Md. at 647–50, 612 A.2d at 267–69.

There is no habeas argument to be made with respect to Fourth Amendment issues.

## V.

### *Errors of Trial Court at Guilt/Innocence Stage*

The Court next addresses Oken's claims of trial court error at the guilt/innocence stage.

### A) *Jury Voir Dire*

1) Oken argues that the trial court's failure to ask voir dire questions of the jury panel that would identify those who may have harbored pro-death penalty bias resulted in a violation of his Sixth and Fourteenth Amendment rights to a fair and impartial jury. Specifically, he argues that the trial court refused to ask three questions tendered by Oken's trial counsel that he claims were required questions under the Supreme Court's mandate in *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

The State responds that this issue is procedurally defaulted and, alternatively, that the decision of the Maryland Court of Appeals did not involve an unreasonable application of clearly established Federal law as determined by the Supreme Court.

The voir dire proceeded in three parts.

First, the panel was questioned as a group.

Second, each venireman was individually asked the following questions in chambers:

— Do you have any strong feelings one way or the other with respect to the death penalty?

— Do you feel that your attitude regarding the death penalty would prevent or substantially impair you from making a fair and impartial decision on whether the defendant is not guilty or guilty based on the

---

5. Following a brief entry, the police obtained a search warrant and, *inter alia,* seized the

gun later tied to the Garvin murder. *Oken II,* 327 Md. at 647, 612 A.2d at 267.

evidence presented and the court's instructions as to the law?

— Do you feel that your attitude regarding the death penalty would prevent or substantially impair you from making a fair and impartial decision on whether the defendant was or was not criminally responsible by reason of insanity based on the evidence presented and the court's instructions as to the law?

— Do you feel that your attitude regarding the death penalty would prevent or substantially impair you from sentencing the defendant based on the evidence presented and the court's instructions as to the law?

If a prospective juror responded affirmatively to a question, the trial judge probed further for possible bias.

Third, after regrouping the entire panel, the court inquired if any venireman knew of any other reason why he or she could not render a fair and impartial verdict based on the evidence and instructions. *Oken II*, 343 Md. at 274, 681 A.2d at 38.

Over objection, the trial court refused at the second stage to ask the individual veniremen three questions tendered by defense counsel:

"Are there any murders or any type of murders where no matter what excuses or explanations are offered, you would feel that the person responsible should get the death penalty? What are they?"

"Are there any circumstances which you could consider as a basis for not imposing the death penalty in the case of a person who has been proven guilty of first degree murder? ..."

"Would you be able to vote for a sentence of imprisonment for life, and not death, even though Steven Oken was found guilty of first degree murder, if you found that the aggravating circum-

stances proven by the state do not outweigh the explanations or mitigating circumstances presented to you by the defendant?"

2) Oken argues that the court's questions denied him the right to a "life-qualified" jury.

He contends that a prospective juror could have answered "yes", he had strong feelings in regard to the death penalty, but "no", his attitude would not prevent or substantially impair him from sentencing petitioner based on the evidence and law and still have a pro-death bias. (As summed up by Oken's counsel at oral argument on the petition, a juror might think: "Bring it on. I want to give him the death penalty.") Further, Oken contends that a juror could have answered that he did *not* have strong feelings about the death penalty, but in the absence of follow-up questions, might nonetheless be in favor of the death penalty in a first degree murder case involving a sex offense. Oken contends that in consequence he was deprived of the proper litany of questions set out in *Morgan v. Illinois*, also known as "Reverse–Witherspoon" voir dire.[6]

3) Oken seeks to raise the jury voir dire issue in this Court in two ways: first as trial court error and, second, by way of a claim of ineffective assistance of counsel on direct appeal based on counsel's failure to argue the trial court's error. The State's procedural default argument runs to both formulations.

■ a) There is no question that Oken's appellate counsel failed to raise the jury voir dire issue on direct appeal. Thus *Oken II* found the question of trial court error on this point to have been waived. *Oken II*, 343 Md. at 268–73, 681 A.2d at 36–38. Although Oken devotes considerable effort to arguing why the Court of

---

**6.** *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), permits voir dire to determine whether any potential juror would in all instances refuse to impose the death penalty upon conviction. "Re-

verse–Witherspoon" voir dire is intended to determine a pro-death bias on the part of prospective jurors. *Morgan v. Illinois*, 504 U.S. at 722, 112 S.Ct. 2222.

Appeals' finding of waiver was incorrect, a federal habeas review does not examine whether the state court properly applied its own law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).[7]

Its inquiry is limited to whether cause and prejudice exist to excuse the default. *Coleman v. Thompson, supra.*

 b) To demonstrate "cause," a petitioner must establish that "some objective factor external to the defense impeded counsel's efforts." *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To demonstrate "prejudice," he must show more than a "possibility of prejudice," and that the error "worked to [his] actual and substantial disadvantage." *See United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also Williams v. Taylor*, 189 F.3d 421, 427 (4th Cir.1999) (in order to demonstrate prejudice, "[petitioner] must show that, absent the alleged constitutional violation, the outcome of the case likely would have been different").

 It has been held that the cause prong of the cause-and-prejudice exception is satisfied if there was actual ineffective assistance of counsel at the trial or appellate level. *Murray v. Carrier, supra.* But the issue of ineffective assistance is itself subject to the doctrine of exhaustion, which "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 489, 106 S.Ct. 2639. And there is more. Not only must the ineffectiveness issue be exhausted; if it is to be asserted as a cause, it must also not be procedurally defaulted. *Justus v. Murray*, 897 F.2d 709, 712–14 (4th Cir. 1990); *accord, Hill v. Jones*, 81 F.3d 1015, 1030–31 (11th Cir.1996).

 These cases clearly spell trouble for Oken in this Court. He is procedurally defaulted in his direct attack on the jury voir dire because his appellate counsel failed to raise the issue on direct appeal. And he is precluded from raising the issue by way of an ineffectiveness of appellate counsel argument because he is procedurally defaulted again, this time by reason of the fact that post-conviction counsel failed to raise the ineffectiveness issue when ap-

7. Citing *Ake v. Oklahoma, supra,* Oken argues that where a state's application of a procedural bar depends on an antecedent ruling of federal law, the state's procedural rules do not provide independent state law grounds. He says that in order to find waiver of the jury voir dire issue in his case, the Court of Appeals had first to find that a defendant's right to a *Morgan*-type voir dire was not subject to the "knowing and intelligent" waiver standard of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Accordingly, his argument runs, the Court of Appeals' finding a waiver cannot be considered an independent ground for denying him relief.

In *Coleman v. Thompson, supra,* the Supreme Court majority observed that "Ake was a direct review case [and] ... [w]e have never applied its rule regarding independent state grounds in federal habeas," 501 U.S. at 741, 111 S.Ct. 2546. But assuming *Ake* is applicable in federal habeas proceedings, *Coleman* suggests there is no independent and adequate state ground only when the decision

"fairly appears to rest primarily on federal law, or to be interwoven with the federal law and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Id.* at 735, 111 S.Ct. 2546.

In the present case, the state law ground for the waiver, viz. failure to raise the jury voir dire question on direct appeal, is clear from the face of the opinion. The Court of Appeals' decision was not interwoven with an interpretation of federal law; its discussion of federal law simply formed a part of its explanation for finding the claim waived. As the Court of Appeals reasoned:

... [A]bsent a request, a trial court does not have an affirmative obligation to make this inquiry. Absent a request, the failure to ask "reverse Witherspoon" questions is not error. It follows that because the right is triggered only upon request, it is subject to traditional procedural default and not the "intelligently and knowingly" standard of waiver.

*Oken II,* 343 Md. at 272, 681 A.2d at 38.

pealing from the post-conviction trial court's decision.

Here is how the Maryland Court of Appeals saw the issue:

> In his petition for post-conviction relief, petitioner raised his Morgan claim in three different ways: (1) trial court error in failing to ask his requested "reverse-Witherspoon" questions of the venire panel; (2) ineffective assistance of trial counsel for failure to object to the trial court's voir dire; and (3) ineffective assistance of appellate counsel for failure to raise the Morgan issue on direct appeal.
>
> Before this Court, Oken raises only the claim of trial court error. In his brief, Oken states that he is not now claiming that his counsel's performance during the voir dire was ineffective. Oken also abandons his claim of ineffective assistance of appellate counsel. He reasons that because this Court did not restrict the issues in the Order granting the application for leave to appeal and the only remedy available to Oken on the ineffective assistance claim is a belated appeal, the proceeding before this Court is in effect his belated appeal on the Morgan issue. We disagree with Oken's interpretation of the nature of this appeal. We said in *Williams v. State*, 292 Md. 201, 205, 438 A.2d 1301, 1303 (1981), that if the application for leave to appeal is granted, the case shall be treated as any other appeal. Section 645–I goes on to state that "[i]f the application to prosecute such appeal shall be granted, the procedure thereafter shall be in conformity with the Maryland Rules."
>
> See *Kelly v. Warden*, 243 Md. 717, 718, 222 A.2d 835, 836 (1966) (post-conviction is not a substitute for an appeal).

*Oken II*, 343 Md. at 269, n. 5, 681 A.2d at 36, n. 5.

Oken argues that the Court of Appeals was wrong to find the ineffective assis-

tance issue was waived on the post-conviction appeal and, in any case, that the Court of Appeals' "rule" was not firmly established or consistently or regularly applied. He contends that there was no reported Maryland case applying procedural default in the context of this case. This Court, however, takes a sharply different view.

The Court of Appeals simply declared that post-conviction is not a substitute for appeal and in effect said that appeals in post-conviction cases, as in appeals generally, raise only as many issues as the appellant chooses to argue. *Id.* These are two unexceptional propositions. *See, e.g., Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir.1983) ("In preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of issues appealed, and appellant generally may not preserve a claim merely by referring to it in an reply brief or at oral argument"); *Murray v. Requardt*, 180 Md. 245, 252, 23 A.2d 697, 699 (1942) ("This court is precluded from passing upon the question . . ., as the plaintiff has not appealed from that part of the decree"); and *see generally*, 5 Am.Jur.2d, Appellate Review, §§ 557, 560. Indeed, the extraordinary argument comes from Oken in saying that leave to appeal from a post-conviction ruling preserves all issues, regardless of whether or not they are briefed on appeal.

The Court finds the issue of the propriety of the jury voir dire procedurally defaulted, whether pursued as an error of the trial court or on the basis of the claimed ineffectiveness of counsel on direct appeal.[8]

 To the extent that Oken argues that *Morgan* announced a new rule of constitutional procedure that should have been applied to his case automatically without regard to waiver, *see Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708,

---

8. Under 28 U.S.C. § 2254(i), "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in

a proceeding arising under § 2254." *See also Mackall v. Angelone*, 131 F.3d 442 (4th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998).

93 L.Ed.2d 649 (1987), *Powell v. Nevada,* 511 U.S. 79, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994) clearly suggests that a defendant's procedural default under state law can still preclude application of the rule. 511 U.S. 79, 114 S.Ct at 1284. Oken's alternative argument fares no better, *i.e.* that if the Court of Appeals was correct in holding that *Morgan* was not new law but merely an extension of an existing precedent (*see Oken II,* 343 Md. at 273, 681 A.2d at 38), then the principle of *Morgan* must be applied retroactively. Though Oken cites *Caspari v. Bohlen,* 510 U.S. 383, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994), to this effect, *Bohlen* does not stand for that proposition. It says nothing about excusing procedural default. In fact, it reaffirms the "new rule" principle that validates reasonable, good faith interpretations of existing precedents whether contrary to or consistent with subsequent decisions. 510 U.S. at 395–6, 114 S.Ct. 948. The Court of Appeals' interpretation of *Morgan*'s requirements was a reasonable, good faith one and therefore valid. *See Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

 Finally, however, so there may be no doubt, on the merits of the matter it can hardly be said that "reasonable jurists" would all agree that the application of the law by the Maryland Court of Appeals was "unreasonable." *Green v. French, supra.* As the Court of Appeals recognized, *Morgan* does not require any particular "catechism" for voir dire, only that it adequately identify constitutionally unqualified prospective jurors. *Oken II,* 343 Md. at 275, 681 A.2d at 39. Based on the Court of Appeals' interpretation of *Morgan,* a juror "who may have an inclination to favor the death penalty, but who would nevertheless conscientiously apply the law, need not be excused," *Oken II,* 343 Md. at 276, 681 A.2d at 40 (quoting *Evans v. State,* 333 Md. 660, 637 A.2d 117 (1994).) Further, as the Court of Appeals points out, *Morgan* recognized the "broad discretion of the trial court in the supervision and exercise of voir dire, subject to the constitutional requirement that the

voir dire adequately identify those unqualified jurors." *Oken II,* 343 Md. at 276–77, 681 A.2d at 40.

Moreover, this Court agrees with the Court of Appeals' determination that:

the [trial court's] initial questions were tailored to inquire into a prospective juror's preconceptions regarding the death penalty and to reveal whether those preconceptions would be obstacle to impartially sentencing the defendant given the facts and the law. The follow-up questions were sufficient to disclose any bias identified in the responses to the initial questions. Together, the questions were sufficient to identify a juror's state of mind concerning the death penalty and the juror's ability to evaluate the evidence impartially.

*Oken II,* 343 Md. at 277, 681 A.2d at 40.

The Court concludes that the Court of Appeals' determination that the trial court did not abuse its discretion regarding the voir dire questions was based on a reasonable application of Supreme Court law.

### B) *Torn Edge Comparison Expert*

 At trial, the State called FBI Special Agent William Heilman to testify regarding his comparison of a piece of rubber found in Dawn Garvin's apartment and a Reebok tennis shoe seized from Oken at the time of his arrest in Maine. Oken claims that the witness had never performed such a comparison on anything other than two-dimensional objects such as paper, had never been qualified as an expert in the field before, and therefore should not have been qualified as an expert in this case. He argues denial of due process.

The State responds that the issue is procedurally defaulted since on direct appeal Oken raised no federal constitutional issue, alleging only that the matter of torn edge comparisons was not a proper subject of expert testimony and that Heilman did not qualify as an expert in the field. The Court of Appeals, it says, decided the mat-

ter purely on the basis of state law, *i.e.* on the grounds that the testimony was a proper subject for expert testimony and that the witness was properly qualified to render an opinion. *Oken I*, 327 Md. at 659–61, 612 A.2d at 273–74.

The Court agrees with the State that this issue is not cognizable. "It is not the province of a federal habeas court to reexamine state court determinations on statelaw questions." *Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. 475. In any case, the decision of the Court of Appeals admits of no dispute:

> In the present case, we believe that the record of Heilman's voir dire examination on his qualifications supports the trial judge's conclusions that Heilman's testimony would be helpful to the jury, and that Heilman was qualified to testify as an expert based on his FBI training. During his voir dire examination, Heilman testified that in addition to conducting a simple side-by-side comparison of the items in question, the procedure for making torn edge comparisons involved the examination of microscopic line crossings and the casting of moldings. Such techniques are certainly not within a juror's everyday experience and, therefore, would aid the jury in determining whether the piece of rubber found in Dawn Garvin's apartment matched the tennis shoe seized from Oken.

> With respect to Heilman's qualifications, Heilman testified that he had received two years of experience comparing torn edges as an assistant in a laboratory for the FBI, and has been qualified by the FBI to conduct torn edge comparisons on his own for approximately seven years. During those years, Heilman stated that he was involved in at least twelve cases requiring torn edge comparisons and that each case may involve "thousands" of comparisons. Although he acknowledged that he never had occasion to make a torn edge comparison with rubber substances, Heilman stated that the technique normally used in making torn edge comparisons was uti-

lized in the case sub judice. We hold that the trial court did not abuse its discretion in permitting Heilman to testify as an expert.

*Oken I*, 327 Md. at 659–61, 612 A.2d at 273–74.

### C) *Testimony Regarding Photo Identification by Non–Witnesses*

■ Oken argues that the trial court erred in allowing the prosecution to elicit testimony from Detective Robert Capel regarding two individuals who were not called as witnesses but who had picked Oken out from a photo spread. He claims that the testimony was irrelevant, constituted improper other crimes evidence, and violated the rule against hearsay. He also claims that it violated his Sixth Amendment right to confrontation.

The State responds that Oken's claim is noncognizable, procedurally defaulted, and otherwise does not survive scrutiny under 28 U.S.C. § 2254(d). Beyond that, the State claims that any error in the trial court's rulings was harmless.

The Court of Appeals found that defense counsel had opened the door to the question of identifying witnesses on cross-examination:

> Here, the record reflects that defense counsel's cross-examination of Detective Capel opened the door to the prosecutor's questions pertaining to the identifications made by Ms. Hollingsworth and Ms. Watkins. During Oken's cross-examination of Detective Capel, defense counsel asked Detective Capel, "How many people altogether did you show [the] display to," and, specifically, who besides the four individuals identified on direct examination saw the photographic arrays. In asking these questions, defense counsel clearly implied that photographic arrays were viewed by more people than those identified on direct examination, and that these other people could not identify Oken.

> On redirect examination, the prosecutor merely responded to the implication

made by defense counsel on cross-examination by eliciting that the Hollingsworth and Watkins incidents were not developed in the State's case because they were not as contemporaneous with Dawn Garvin's murder as were the incidents involving the witnesses who were called. Therefore, since Oken raised the Hollingsworth and Watkins issue on cross-examination, we hold that he "cannot now be heard to complain that the State sought to rebut its significance. *Trimble, supra,* 300 Md. at 403, 478 A.2d at 1151."

*Oken I,* 327 Md. at 669–70, 612 A.2d at 278.

In addition, the Court of Appeals noted the broad discretion allowed to trial courts with regard to controlling the scope of examination of witnesses. *Oken I,* 327 Md. at 669, 612 A.2d at 278.

These rulings by the Court constituted an adequate and independent state law ground and bar federal review of the claim. *Estelle v. McGuire, supra.*

### D) *Refreshing Recollection of a Witness*

 The next alleged error of the trial court at the guilt/innocence stage is that it allowed the prosecution to refresh the recollection of a witness who had not indicated a failure of testimony and who in fact stated he was sure of his testimony. This, according to Oken, violated his right to due process. The State's response is that the claim is noncognizable and procedurally defaulted.

On direct examination, witness Mark Glidden at first stated that he lived at 23 Lincoln Woods Apartments and said that on the night of the Carvin murder he saw Oken walking toward 25 Lincoln Woods Apartments. In fact Glidden lived at Number 25 and Oken at Number 23. Although Glidden told the prosecutor he was "sure" about the apartment numbers, the prosecutor, over objection, showed him a police report to "refresh his recollection" and Glidden immediately revised his testimony, saying he was "nervous" and had

"made a mistake." *Oken I,* 327 Md. at 671, 612 A.2d at 279.

Oken never argued on appeal that the trial court's ruling was constitutionally infirm, only that it amounted to an abuse of the court's discretion. Accordingly, his effort to raise the issue as a constitutional matter in this Court is procedurally defaulted. Nevertheless, on the merits it is clear that the Court of Appeals was amply justified in acknowledging the discretion that a trial court has in allowing the clarification of testimony in such instances, 327 Md. at 672–74, 612 A.2d at 279–80, so that Article 28, Section 2254(d) is in no way implicated.

### E) *Prosecutor's Closing Statement*

 Oken did not testify at the guilt/innocence phase of the trial. However in his initial closing the prosecutor made these remarks:

Defendant said some things through his attorney in opening that I want to address.

Then, in his rebuttal argument, the prosecutor said

'Looks are deceiving. [Oken] sat over here for two weeks taking notes, talking to his lawyer, smugly looking at all of us, listening to the judge, listening to the evidence but looks are deceiving ... because it's the person within. It's the monster within.'

Oken claims he was denied due process when the prosecutor was permitted to make these and other demeanor-related comments. The State argues procedural default and alternatively that Oken has failed to show the Court of Appeals' noncompliance with 28 U.S.C. § 2254(d). It points out that defense counsel voiced no objection at trial with respect to the remarks.

On direct appeal Oken argued the due process violation and the Court of Appeals appears to have glossed over any procedural default. Oken relied on *Holbrook v. State,* 6 Md.App. 265, 250 A.2d 904 (1969).

The Court of Appeals, however, distinguished *Holbrook*, pointing out that there a motion for mistrial had been made, preserving the contention that the closing remarks were improper, whereas no such motion had been made in Oken's case. *Oken I*, 327 Md. at 675–76, 612 A.2d at 281.

The Court also found that the closing argument itself was not improper, given the wide latitude afforded counsel in summing up to the jury. The Court held that reversal would only have been required if it appeared that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced it to the prejudice of the accused. It found none of that in Oken's case. It found the jurors were free to observe Oken throughout the trial and draw their own independent conclusions concerning his demeanor. They were further instructed by the trial judge that arguments of counsel were not evidence. Additionally, the Court noted that several witnesses had in fact talked about Oken's deceiving appearance, looking cleancut and the like. *See Oken I*, 327 Md. at 676–77, 612 A.2d at 280–82.

Given this analysis, which this Court finds well within reason, there is no basis under 28 U.S.C. § 2254(d) to challenge the state court's ruling.

### F) *Insufficient Evidence of Sexual Assault*

■ Oken next says that insufficient evidence was presented at the guilt/innocence phase to convict him of first degree sexual assault. This is important, he argues, because that conviction became the only aggravating factor used to impose the death penalty. Specifically, Oken contends that the State, while presenting evidence that a bottle was found in the victim's vagina when her body was discovered, did not offer evidence from which a juror could conclude beyond a reasonable doubt that the victim was alive at the time of the sexual assault.

The State argues no procedural default as to this issue, only that the decision of the Court of Appeals did not involve an unreasonable application of clearly established Supreme Court law under 28 U.S.C. § 2254(d)(1) and that, under *Green v. French, supra,* reasonable jurists could disagree as to the conclusion reached by the Court of Appeals.

Both sides agree that the constitutional standard that applies in this case to determine sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The Court of Appeals took note of evidence that the victim's clothing was strewn around the living room, her brassiere was still fastened and ripped on the side, her pants were found turned inside out, and that a search of Oken's home revealed a list in Oken's handwriting which referred among other things to gauze pads, chloroform, a gag, sock and adhesive tape, panty hose, dildos, vibrators and the like. *Oken I*, 327 Md. at 664, 612 A.2d at 275–76.

It rejected Oken's insufficiency of evidence claim, reasoning as follows:

> From this evidence a permissible inference can be drawn that the victim resisted the commission of a sexual act upon her by Oken who had come prepared to forcibly perpetrate sexual offenses upon a live victim whom he might have to immobilize by binding and gagging. In light of that permissible inference, we believe that a rational trier of fact could have concluded beyond a reasonable doubt that Dawn Garvin was still alive when Oken inserted the bottle into her vagina. Cf. *Hines v. State*, 58 Md.App. 637, 665–66, 473 A.2d 1335, 1348–49 (1984). Accordingly, we shall uphold Oken's conviction for first degree sexual offense.

*Oken I*, 327 Md. at 664–65, 612 A.2d at 276.

This Court agrees. The Court of Appeals applied the proper legal standard in assessing Oken's claim and made a patently reasonable determination of the facts. Oken's challenge on these grounds fails to clear the hurdles established by 28 U.S.C. § 2254(d).

## VI.

### Ineffective Assistance of Counsel at Guilt/Innocence Stage

Oken sets forth several alleged instances of ineffective assistance of counsel during the guilt/innocence phase.

The Court begins with a review of the applicable standards.

A) *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) establishes the standards for a court's review of whether counsel has rendered effective assistance within the meaning of the Sixth Amendment. *See also Matthews v. Evatt,* 105 F.3d 907, 919 (4th Cir.1997), *cert. denied,* 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997). Under *Strickland,* a state prisoner claiming ineffective assistance rendering his conviction invalid must show 1) that "counsel's representation fell below an objective standard of reasonableness" and 2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688–94, 104 S.Ct. 2052. As to the first prong, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052. All circumstance must be considered. *Id.* at 688, 104 S.Ct. 2052. The court is directed to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," as "[t]here are countless ways to provide effective assistance in a given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689, 104 S.Ct. 2052. Thus "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* To prevail, a state prisoner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound tactical strategy.'" *Id.* at 689, 104 S.Ct. 2052 (citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

Moreover, even if counsel commits an unreasonable error, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. As the Supreme Court held in *Lockhart v. Fretwell,* "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The prejudice component under *Strickland,* "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at 372, 113 S.Ct. 838. No unreliability or unfairness will be found where counsel's ineffectiveness "does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.*

■ Under Section 2254(d), as amended, a federal court cannot grant relief on a claim of ineffective assistance of counsel if the state court denied the claim based on a reasonable application of the *Strickland* standards to the facts presented in the state court proceeding. As the Fourth Circuit stated in *Green v. French, supra* at 870, "habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable."

■ A final perspective: In this Circuit, ineffective assistance of counsel

claims must be reviewed individually rather than collectively; an attorney's acts or omissions that are not individually unconstitutional cannot be added together to create a constitutional violation. *Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1290, 143 L.Ed.2d 382 (1999).

B) Oken raises five instances of alleged ineffective assistance during this period, each of which will be discussed in turn.

### 1) *Advice re Maine Alford Plea*

▇▇▇ Oken contends that his conditional guilty plea in Maine was caused by erroneous and prejudicial legal advice from trial counsel in two respects.

First, he contends that trial counsel erroneously advised him that if he entered guilty pleas in Maine under *North Carolina v. Alford, supra,* the plea could not be used as evidence against him in the Maryland death penalty case either at the guilt/innocence stage or during any death penalty stage. This advice was purportedly incorrect because the Maine murder conviction was in fact used in Maryland. Oken says this prejudiced him at the penalty phase when the Maine conviction deprived him of a statutory mitigating factor under Article 27, § 413(g)(1) of the *Maryland Code, viz.* the absence of a violent felony conviction.

Second, trial counsel is alleged to have given erroneous advice with regard to the law of extradition and rendition, omitting the fact that they were subject to Executive Agreement between the Governors of Maryland and Maine. Trial counsel erroneously believed based on the Interstate Agreement on Detainers (IAD) that Oken could not be transferred to Maryland after a Maine trial and sentenced in Maryland without first being returned to Maine to serve any Maine sentence before serving a Maryland sentence, including a death sentence. In fact, by Executive Agreement,

Maine could (and did) permit Maryland to execute its sentence first.

The State responds that any attempt by Oken' s part to raise either of these ineffectiveness issues in connection with the guilt/innocence stage should be rejected on procedural default grounds. The issues, the State argues, were pursued in the Maryland Court of Appeals only in connection with a claim of ineffectiveness of counsel at the sentencing stage, not at the guilt/innocence stage.

There is no question that on direct appeal Oken pursued these aspects of alleged ineffectiveness only in connection with the sentencing phase. The Court accordingly agrees that the issue of counsel's alleged erroneous advice is procedurally defaulted with respect to the guilt/innocence stage.[9]

However, inasmuch as the matter must be visited again when the Court discusses the ineffectiveness of counsel at the sentencing stage, it is convenient at this point to consider how the Maryland Court of Appeals dealt with the matter.

The Court of Appeals noted that the post-conviction trial court's decision "was based on factual findings and an assessment of the credibility of the witnesses at the hearing." *Oken II,* 343 Md. at 297–98, 681 A.2d at 50. Specifically, the post-conviction court credited the testimony of trial counsel over that of Oken:

At the post-conviction hearing, Mr. Lipsitz testified that he made no promises to Oken. He testified that he had the impression that there was a possibility that the State could not use an Alford plea in a death penalty proceeding. With respect to the IAD, he denied making any guarantees or promises to Oken. He recounted that he advised Oken that under the Interstate Agreement on Detainers, it was possible that Oken would have to be returned to Maine to serve his sentence before any Maryland sen-

---

9. Apart from this, Oken has in no way demonstrated how the purported advice prejudiced

him at the guilt/innocence stage.

tence could be satisfied; although he was aware that the Governors could agree otherwise, he did not expect that they would do so in this case. Mr. Lipsitz testified that he was looking for ways to manufacture arguments on Oken's behalf because Oken was reluctant to go to trial: "My approach was I was looking for issues. I was looking for something to roll in front of a judge to give him a chance to make a mistake and stub his toe on."

*Oken II*, 343 Md. at 298, 681 A.2d at 50–51.

In addition, the Court of Appeals noted that in his voir dire before the Maine court when he pleaded guilty to the murder charge there, Oken told the court that his decision to enter the plea was unrelated to any other prosecution against him in other state. *Id.* Given this rationale—unquestionably reasonable in light of the evidence—any claim of ineffective assistance of appellate counsel for not raising the issue necessarily falls short.

### 2) *Failure to Object to Prosecutor's Closing Argument*

The Court has already determined that the Court of Appeals could reasonably have concluded that the prosecutor's remarks regarding what Oken purportedly "said" in opening or his references to Oken's demeanor at trial did not exceed permissible bounds. *See* Part V(B)(5) hereof.

To the extent that the prosecutor's remarks were questionable at all, defense counsel may well have declined to object for tactical reasons. Indeed Oken's own expert testified at the post-conviction hearing that deciding whether and when to object during opposing counsel's argument is a "judgment call." In any event, because the prosecutor's comments were not improper, there could be no deficient performance by counsel nor prejudice to Oken in failing to object to them. *See Oken II*, 343 Md. at 292–94, 681 A.2d at 48–9.

Oken fails to demonstrate that the Court of Appeals' decision evaluating the level of performance of trial counsel satisfies the requirements of 28 U.S.C. § 2254(d).

### 3) *Development of Documentary Evidence Regarding Drug Abuse*

■ Oken next argues that trial counsel was ineffective at the guilt/innocence stage because he failed to investigate and develop documentary evidence that would have corroborated other evidence showing that Oken was abusing drugs at the time of the death of Dawn Garvin. Supposedly, prescription records from Oken's pharmacy for the period 1986 through November 1987 would have established that numerous drugs delivered to Oken's pharmacy (where he was employed) were unaccounted for, which would in turn have corroborated other evidence showing that Oken was using massive amounts of other drugs at the time of the alleged offense. This evidence, Oken argues, would have aided him in presenting a defense of voluntary drug intoxication and/or diminished capacity with the goal of reducing his crime from first to second degree murder.

The State responds that this issue is procedurally defaulted. It contends that although Oken complained of ineffective assistance based on counsel's failure to investigate and present available evidence of substance abuse at the guilt/innocence and sentencing stages of the trial, nothing was said of documentary evidence in particular. The Court need not parse the matter so fine.

Procedural default aside, the short answer is that the Maryland Court of Appeals found that the jury had heard substantial evidence of Oken's substance abuse problems presented through a number of witnesses, including Oken's ex-wife, his father, mother, acquaintances and three medical witnesses. It held that any additional evidence would have been cumulative. *Oken II*, 343 Md. at 287–88, 681 A.2d at 45. The Court concludes that on the law and facts it was reasonable for the Court of Appeals to find no prejudice to Oken, hence no ineffective assistance of

counsel by reason of any omission of proof on counsel's part.

#### 4) *Failure to File Request Under IAD*

■ As a further instance of ineffective assistance of counsel at the guilt/innocence stage, Oken asserts that counsel should have filed a request under the IAD to have Oken returned to Maryland for trial prior to the disposition of the charges in Maine. If he had been tried in Maryland prior to the disposition of the Maine case, Oken would have qualified for a statutory mitigator under Article 27, § 413(g)(1) of the *Maryland Code, i.e.* the absence of a prior conviction of a crime of violence.

The State argues that, to the extent that Oken intends by this allegation merely to repeat his earlier claim of ineffective assistance of counsel relative to advice given about the IAD, the Court has already disposed of that argument. It also says that, to the extent Oken intends to distinguish the act of failing to file a request under the IAD from the act of advising as to the applicability of the IAD, the issue is procedurally defaulted since it was not raised before the Maryland Court of Appeals.

The State is correct on both counts.

Nonetheless it bears noting that the Maryland Court of Appeals expressly exonerated trial counsel from any claim of ineffective assistance in this regard. As the Court observed, "[a]lthough allowed by law, there was no way of knowing that the Governors of Maine and Maryland would enter into the agreement [which would trump the IAD and allow Maryland to execute its sentence first]." *See Oken II,* 343 Md. at 298, 681 A.2d at 50.

Indeed, the Court of Appeals found that trial counsel's advice regarding the *Alford* plea developed arguments which might have saved Oken's life in what was otherwise "a very weak case." *Id.* at 298, 681 A.2d 30. Had there been no Executive Agreement between the Governors of Maine and Maryland, Oken's prior plea in Maine presumably would have required him to be returned to Maine first to serve his life sentence, thus shielding him from a possible death sentence in Maryland.

#### 5) *Cumulative Effect*

As indicated, the Court cannot view counsel's acts or omissions collectively, but must do so individually for purposes of ineffective assistance claims. *Fisher v. Angelone, supra.* The argument of cumulative effect is not available to Oken.

### VII.

#### *Error of Trial Court at Criminal Responsibility Stage*

■ After the jury found Oken guilty of the various charges placed against him, he opted to have a bench trial with regard to the issue of criminal responsibility.

He contends that the trial court violated his due process rights at this stage by advising him that any testimony he might give during that stage could be presented to the jury at the sentencing stage if the State desired. On this basis, Oken says, he forewent his right to testify. The trial court eventually found that Oken possessed the ability to conduct himself in conformity with the law and appreciated the criminal nature of his behavior.

Oken contends that the trial judge's action violated *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), in which the Supreme Court held that a defendant's testimony at a pre-trial suppression hearing could not be admitted against him at trial. In Oken's view, the *Simmons* rationale was equally applicable in this case.

There is no question that this issue was preserved for subsequent habeas review purposes. Accordingly, the State responds on the merits. It argues that Oken is in essence asking that a new rule of law be applied to find error, which would be barred on the basis of non-retroactivity. It also argues that the Maryland Court of Appeals could properly have found that Oken waived his right to testify for rea-

sons independent of any advice given by the trial court.

The core holding of *Simmons* is not disputed. What the State argues and what the Maryland Court of Appeals held is that *Simmons* is inapplicable to a case such as this. While noting that the *Simmons* rationale has been applied in certain contexts outside of suppression hearings, *Oken I,* 327 Md. at 638, n. 1, 612 A.2d 258, the Court of Appeals cited *McGautha v. California,* 402 U.S. 183, 211–12, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) to the effect that "Simmons was strictly limited to the protection of a defendant's testimony in a hearing on a motion to suppress evidence alleged to have been taken in violation of his constitutional rights." *Oken I,* 327 Md. at 639, 612 A.2d at 263. It therefore found Oken's reliance on *Simmons* misplaced and went on to cite *Gilliam v. State,* 320 Md. 637, 579 A.2d 744 (1990), for the proposition that a rebuttable presumption exists that a represented defendant has been fully informed regarding his right to testify, and, absent a clear indication to the contrary, he will be presumed to have voluntarily decided to testify or not testify. *Id.* at 655–56, 579 A.2d 744.

In *McGautha,* which involved a constitutional challenge to a unitary trial and sentencing proceeding, the Supreme Court concluded that "the policies of the privilege against compelled self-incrimination are not offended when a defendant in a capital case yields to the pressure to testify on the issue of punishment at the risk of damaging his case on guilt." 402 U.S. at 217, 91 S.Ct. 1454. *McGautha* rejected the related argument of the defendant who chooses to remain silent: "We do not think that Ohio was required to provide an opportunity for [the defendant] to speak to the jury free from any adverse consequences on the issue of guilt." *Id.* at 220, 91 S.Ct. 1454.

*McGautha* makes the reach of *Simmons* uncertain. To this day it remains unclear whether testimony given during a bench trial at the criminal responsibility stage of a "tri-furcated" capital proceeding enjoys use immunity at the sentencing stage. In other words, reasonable jurists could differ over whether the advice given by the trial judge at this juncture was even wrong. The Court thus agrees with the State that for the Court to find error in this case, it would have to recognize a new rule, one "not dictated by precedent." *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The principle of non-retroactivity, however, bars Oken's claim. *Id.*

At the same time, the holding of the Court of Appeals that it found no clear indication that the trial court's advice regarding Oken's right to testify had any influence on his decision not to testify was also fairly supported by the evidence. *Oken I,* 327 Md. at 641–42, 612 A.2d at 264. The record reflects that Oken acknowledged having consulted with his defense counsel concerning his election to testify at the responsibility hearing prior to the trial court's advice and that he was given an additional opportunity to consult his attorney about testifying after hearing the court's advice. The Court of Appeals could properly have found that Oken knowingly and intelligently and voluntarily waived his right to testify at the criminal responsibility hearing.

On neither the law nor the facts has Oken made the necessary § 2254(d) showing as to this issue.

## VIII.

Oken claims a number of trial court errors at the sentencing phase of his trial.

### A) *Double Counting of First Degree Sexual Charge*

▮▮▮ Oken argues that the trial court erred in allowing the first degree sexual charge against him to be used both as the basis for a felony murder conviction and as the sole aggravator in the penalty phase. He contends that his Eighth Amendment guarantee against cruel and unusual punishment has been violated.

The State responds that this claim is procedurally defaulted, otherwise barred by principles of non-retroactivity, and in any event not in contravention of the standards of 28 U.S.C. § 2254(d).

There is no question that Oken failed to raise this issue on direct appeal and on that basis the Court of Appeals deemed the matter waived. *Oken II,* 343 Md. at 301–02, 681 A.2d at 52. By the same token, insofar as Oken seeks to excuse his default by asserting ineffective assistance of counsel on direct appeal, it is also clear that that formulation of the issue is likewise defaulted, not having been raised in the post-conviction appeal.

Apart from this, the Court of Appeals' decision rejecting the double counting argument was in no way an unreasonable application of Federal law as defined by the Supreme Court. *Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) gives the quietus to Oken's argument:

> The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.

484 U.S. at 246, 108 S.Ct. 546.

### B) *Failure to Instruct Under Simmons v. South Carolina*

■ Oken originally argued that the Court of Appeals erred in holding that his due process rights were not violated when the trial judge failed to instruct the sentencing jury that it could consider his Maine sentence of life without parole as a nonstatutory mitigating factor under *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). At oral argument in the present case, however, Oken for the most part abandoned this claim in view of the Supreme Court's holding in *O'Dell v. Netherland,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). *O'Dell* held *Simmons* was a new rule and,

as such, under *Teague v. Lane, supra,* non-retroactive.

But Oken maintains that, even if he was not entitled to a *Simmons* instruction, there still remains a due process issue with regard to the closing argument made by the prosecution on rebuttal, specifically the prosecutor's alleged suggestion to the jury to ignore Oken's Maine life sentence of life without parole because it was outside Maryland law and outside the verdict form.

The State responds that Oken's *Simmons* claim, repackaged so as to now cover the prosecutor's closing argument, is procedurally defaulted. It contends that Oken made no independent argument to the Maryland Court of Appeals that the prosecutor's closing arguments violated due process as opposed to arguing that the trial court improperly failed to give a *Simmons* instruction.

This is what the prosecutor argued in rebuttal:

> [Defense Counsel] Mr. Lipsitz talks of a conviction in Maine and that this man will serve life without parole. Again, he tries to take you outside the Maryland law, outside the form. Remember why we're here. We're here to determine what punishment is appropriate for the acts committed in this case, we're not here to determine other things. We're here to determine the punishment for the acts committed in this case. Don't let your attention get diverted by things like Maine sections and parole issues in other jurisdictions, stick to the facts in this case.

Exhibit 57 at E.716.

Oken contends that these remarks were prohibited under *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), which held that the due process clause does not allow the execution of a person "on the basis of information which he had no opportunity to deny or explain," 430 U.S. at 362, 97 S.Ct. 1197. He suggests that in the present case the prosecution, having the last word, was able to

suggest to the jury that the Maine sentence of life imprisonment was not a mitigating circumstance because it was outside Maryland law and outside the verdict forum. He cites to *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) which established the scope of review of federal habeas court in evaluating improper closing arguments by the prosecutor. The relevant question under *Darden* is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 180, 106 S.Ct. 2464.

The Court agrees with the State that, as Oken now reframes the issue, he is procedurally defaulted. But for the sake of argument, Oken's claim will be viewed as faulting the trial court for not giving a curative instruction once the allegedly improper prosecutorial comment was made. Even then, Oken fails to persuade. Taken all in all, it cannot be said consistent with *Darden* that the prosecutor's remarks came even close to "so infecting the trial with unfairness as to make the resulting conviction a denial of due process."

In making this judgment, the Court considers, among other things, the prejudice that arose from the argument, the propriety of the jury instructions, and the reasonable probability that the outcome would have been different. *See Preston v. Delo*, 100 F.3d 596, 602 (8th Cir.1996), *cert. denied*, — U.S. ——, 118 S.Ct. 357, 139 L.Ed.2d 279 (1997).

In this case it is doubtful that there was any prejudice at all since the remarks could well be construed to be no more than a vigorous argument for imposing the death penalty in Maryland as opposed to acceding to life without imprisonment in Maine. But whatever prejudice may have inhered in the remarks was surely minimal, given the evidence in the case, the arguments made by defense counsel, and the instructions the court gave relative to the meaning of life without parole. The pre-sentence investigation report introduced by the State showed that Oken had

been sentenced in Maine to life in prison without parole. Defense counsel told the jury in his opening statement and closing arguments that Oken had received a sentence of life without parole in Maine. The trial court instructed the jury as to the meaning of life without parole and told them that life without the possibility of parole was an available alternative sentence in Maryland. It also instructed the jury to consider Oken's parole eligibility as a mitigating factor. It then explained the seven statutory mitigators under Maryland law and explained that non-statutory mitigators were "every other mitigating circumstance or circumstances that any one of you may find not covered by [the statutory mitigators]." The jury even sent out a note asking if there was any chance Oken could be released if given life without parole, to which the court, after consultation with counsel answered in the negative. *Oken II*, 343 Md. at 281, 681 A.2d at 42.

On this record, the Court of Appeals could reasonably have concluded that there was no reasonable likelihood that anything the prosecutor said about the Maine sentence had any effect on the outcome of the proceeding. Consequently, Article 28, § 2254(d) is in no way implicated.

### C) *Catch-all Provision for Mitigation*

Oken argues that the trial court erred in refusing to instruct the jury that under the Maryland Death Penalty Statute's catch-all provision for mitigation, *see Maryland Code*, Article 27, § 413(g)(8) (1987 Repl.Vol.), it could extend mercy to Oken as a mitigating factor and not impose the death penalty on that basis alone.

The State argues that this claim is procedurally defaulted or alternatively fails under 28 U.S.C. § 2254(d).

It is clear that Oken did not request the referenced instruction at trial or on direct appeal. Accordingly, the Court of Appeals found the issue had been waived. *Oken II*, 343 Md. at 302, 681 A.2d at 52. So does this Court.

While Oken, for some reason, does not argue plain error before this Court as he did before the Maryland Court of Appeals, ultimately the point is still academic. The Court of Appeals properly held that "the trial court was not required to instruct the jury to consider specific non-statutory mitigating circumstances." *Oken II,* 343 Md. at 302–03, 681 A.2d at 53.

Besides that, the Court properly found as a matter of fact that the jury had been "clearly informed" that it could consider mercy as a mitigating factor:

> Furthermore, Oken's claim lacks merit. We find that the trial court clearly informed the jury it could consider mercy as a mitigating factor. The jury was instructed that

> [f]or purposes of this sentencing proceeding, a mitigating circumstance is anything about the defendant or about the facts of this case that, in fairness or in mercy, may make the death sentence an inappropriate penalty for this defendant.

> A mitigating circumstance is, simply put, any fact which may cause any of you to conclude that the death penalty is not appropriate in this case.

> The jury was also instructed that they could consider mercy. They were told as follows:

> In determining whether death is the appropriate sentence, it is proper for you to exercise your own moral, factual and legal judgment in deciding whether the aggravating circumstance you may have found is sufficient in your minds to call for the punishment of death. You may decide that the aggravating factor proved by the State is not a sufficient reason to impose a death sentence and on that basis alone decide to impose a life sentence.

> Nothing in the law forbids you from extending mercy out of the belief that life imprisonment is sufficient punishment under all of the circumstances.

> The jury was adequately informed that it could impose a life sentence based solely on a desire to extend mercy.

*Oken II,* 343 Md. at 302–03, 681 A.2d at 53.

This ruling constituted a reasonable application of relevant law and facts consistent with 28 U.S.C. § 2254(d).

### D) *Failure to Instruct re Deadlock*

Oken originally argued in this Court that the trial court erred at the sentencing phase when it refused to instruct the jury that, if it deadlocked, the sentence imposed would not be death. Indeed, he suggested that the trial court had misled the jury into believing that it needed to reach a unanimous decision and that deadlock was not an option.

 At oral argument in the present case, however, Oken conceded that *Jones v. United States,* then pending in the U.S. Supreme Court, would be dispositive of the issue. The Supreme Court has since ruled in *Jones,* holding that the Eighth Amendment does not require that a capital sentencing jury be instructed as to the consequences of a deadlock. *Jones v. U.S.,* 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

The Court therefore considers Oken to have conceded on this point.

### IX.

The next errors claimed by Oken involve instances of alleged ineffective assistance of counsel during the sentencing phase.

### A) *Failure to Prepare Dr. Berlin and Dr. Spodak*

 Oken complains that trial counsel was ineffective during the sentencing phase when he failed to properly prepare Dr. Fred Berlin in advance, such that Berlin, in explaining why he diagnosed Oken as suffering from the disorders that he did, stated that Oken had raped and killed his sister-in-law Patricia Hirt on November 15, 1987, testimony not otherwise admissi-

ble in evidence. Oken complains that counsel's error was compounded when he cross-examined Dr. Michael Spodak and referred to Oken as having left Maryland on November 16, 1987 because of "another substantial event which occurred." In Oken's view, bringing the Hirt murder, Oken's third, to the attention of the jury had a "devastating" effect on the sentencing proceeding.

The State responds that the finding of the Maryland Court of Appeals that trial counsel did not perform deficiently with regard to this testimony was not an unreasonable application of law or fact under 28 U.S.C. § 2254(d).

The Court of Appeals observed that Oken's counsel was seeking to establish that Oken suffered from sexual sadism, a recognized mental disorder, that might mitigate against imposing the death penalty. The basis for that diagnosis, however, included recognition of the Hirt murder. In defense of this strategy, trial counsel testified at the post-conviction hearing that reference to the Hirt murder might "reinforce that allegation [of sexual sadism] and persuade somebody that [Oken] really was sick." *Oken II*, 343 Md. at 289, 681 A.2d at 46. The Court of Appeals noted, moreover, that the post-conviction court rejected as improper any suggestion that trial counsel should have instructed Dr. Berlin to withhold part of his factual basis simply because it might hurt Oken's case. *Id.*

As a result, finding no error in allowing Dr. Berlin to discuss the Hirt homicide, the Court of Appeals found no error to compound when counsel referred to the Hirt murder during his cross-examination of Dr. Spodak. *Oken II*, 343 Md. at 290, 681 A.2d at 47.

The Court of Appeals deemed the sexual sadism argument a tactical decision that it would not "second-guess," 343 Md. at 291, 681 A.2d at 47, and accordingly held counsel's actions in no way deficient within the meaning of *Strickland.*

This Court is in no better position to "second-guess" the Maryland Court of Appeals as to this claim. Its reasoning is sound on both the law and facts.

### B) *Failure to Prepare Dr. Berlin and Dr. Payson*

 Oken next argues that trial counsel was ineffective in failing to prepare both Dr. Berlin and Dr. Henry E. Payson on the issue of future dangerousness of Oken and his long-term prospects for recovery. Both doctors testified that Oken suffered from sexual sadism and was an incurably violent man. This, according to Oken, severely prejudiced him in the eyes of the jury since he was not trying to establish his lack of future dangerousness as a mitigating factor.

The State argues that the determination of the Maryland Court of Appeals that counsel was not deficient in presenting the testimony should be left undisturbed.

For the same reasons set forth in the section next above, this Court agrees.

### C) *Claims Regarding Maine Homicide*

 Oken makes multiple claims of ineffectiveness of counsel at the sentencing stage relative to his Maine homicide sentence: that counsel failed to offer proof to show that the Maine life sentence meant life without parole; that he failed to present effective argument that Oken would not be paroled within his lifetime; and that he failed to request an instruction that the life sentence in Maine could be considered a non-statutory mitigating circumstance. The Court has already addressed each of these issues in connection with alleged trial court error at the sentencing stage. *See* Part VIII(B) hereof. They are now resurrected as ineffective assistance of appellate counsel arguments.

The concise answer to these claims, as set out in the earlier portion of this Opinion, is that the Maryland Court of Appeals, on the record before it, could justifiably have concluded that the jury was fairly apprised of the significance of the Maine life sentence without parole.

There was in short no showing of deficient performance and prejudice, hence no demonstration of ineffective assistance of counsel. This Court finds the Court of Appeals to have acted reasonably in light of 28 U.S.C. § 2254(d).

### D) *Failure to Object to State's Closing Arguments*

■ During closing argument at sentencing, the prosecutor referred to the Persian Gulf war as involving sacrifices so that the community could "live in a fair and just and hopefully a safe society." *Oken II,* 343 Md. at 293, 681 A.2d at 48.

Oken argues that counsel's failure to object to this "patriotic duty" speech constituted ineffectiveness of counsel.

The State's response is that the Court of Appeals could properly have determined that counsel's failure to object to this statement was a matter of tactics and trial strategy. Indeed trial counsel testified at the post-conviction hearing that he specifically forewent objecting to those remarks so as not to highlight comments and do greater harm than good. *Oken II,* 343 Md. at 294, 681 A.2d at 48.

The conclusion of the Maryland Court of Appeals that this was a "tactical decision within the range of reasonably competent representation" was consistent with 28 U.S.C. § 2254(d) and (e). *Oken II,* 343 Md. at 295, 681 A.2d at 49.

### E) *Failure to Develop Various Theories of Defense*

■ Oken's final claims of ineffective assistance of counsel at the sentencing phase include counsel's failure to investigate Oken's drug abuse prior to the murder of Dawn Garvin; his failure to pursue a voluntary intoxication theory; and his failure to have a hair sample tested to show Oken's drug addiction at the time of the Garvin murder. This evidence, he says, could have convinced the jury to convict him of second degree murder and spare him from the death penalty.

The State responds that these claims are either procedurally defaulted or alterna-

tively that the decision of the Court of Appeals has not been shown to contravene 28 U.S.C. § 2254.

The Court need not tarry on the procedural default arguments.

The Court of Appeals recognized that any additional substance abuse evidence would have been cumulative, a conclusion which this Court has already ratified in connection with its discussion of ineffective assistance of counsel at the guilt/innocence phase. *See* Part VI(B)(3) hereof. To be specific, the Court of Appeals could fairly have concluded that any test of hair samples to show drug use would have been cumulative. *See Oken II,* 343 Md. at 287–88, 681 A.2d at 45.

As to the voluntary intoxication defense, it is apparent that some evidence to that effect was in fact presented to the jury at the guilt/innocence stage and rejected by it. Moreover, as the Court of Appeals noted, Oken was claiming amnesia at the time the murders occurred, which definitely made a voluntary intoxication defense problematic. *See Oken II,* 343 Md. at 287, n. 15, 681 A.2d at 44, n. 15. As the State also points out, there was also no reason to believe that the jury's view of the voluntary intoxification argument would have changed between trial and sentencing. The conclusion of the Court of Appeals that counsel's failure to act in this regard was neither deficient nor prejudicial and involved no unreasonable application of law or fact.

## X.

### *Ineffective Assistance of Counsel at the Appellate Stage*

Oken cites a number of instances of alleged ineffective assistance of counsel at the appellate stage.

### A) *Failure to Raise Voir Dire Issue*

■ Oken alleges that appellate counsel failed to raise the issue of the trial court's alleged violation of *Morgan v. Illinois* on voir dire.

This issue has already been discussed in connection with the alleged error of the trial court. *See* Part V(A)(1) hereof.

The Court concludes that the issue is defaulted by reason of the failure of post-conviction counsel to pursue the issue on appeal.

B) *Other Claims of Ineffective Assistance on Appeal*

■ In addition to the foregoing, Oken points to a number of other supposedly deficient and prejudicial omissions by counsel on appeal. These include counsel's failure to appeal:

(a) the trial court's allowance into evidence of photographs depicting the victim with a bottle protruding from her vagina;

(b) its failure to strike the prosecutor's comments in closing argument regarding Oken's right to remain silent and calling attention to Oken's demeanor;

(c) its failure to halt the prosecutor's comments in closing argument about the Persian Gulf war; and

(d) its plain error in failing to *sua sponte* tell the sentencing jury that it could consider Oken's Maine sentence to be a mitigating circumstances;

The State's answer is that all of these issues are procedurally defaulted.

The Court agrees.

As already discussed in connection with alleged trial court error, the Court of Appeals ruled that Oken pursued no claim of ineffective assistance of appellate counsel once the Court granted him leave to appeal from the circuit court's denial of post-conviction relief. *See* Part V(A)(1) hereof. Any issues that might have been pursued in appealing from the decision of the post-conviction court were required to be argued in opening brief or they would be deemed waived.

For reasons already stated, this Court finds that Oken is procedurally defaulted as to all issues of ineffectiveness of appellate counsel.

XI.

*Error of the Trial Court at the Post-Conviction Stage*

Oken's final allegation is that the post-conviction court erred in not allowing him to obtain his own hair samples taken at the time of the arrest so that he might conduct forensic tests to establish his substance abuse at the time of the Garvin murder.

The State responds that this claim is not cognizable and in any event without merit.

■ In *Bryant v. Maryland,* 848 F.2d 492, 493 (4th Cir.1988), the Fourth Circuit held that claims of error in state post-conviction proceedings are not grounds for habeas relief. In view of this, the claimed error of the post-conviction court and the Maryland Court of Appeals is not cognizable. The matter might end there.

■ But, as with virtually all of the arguments Oken presents, there is a short answer to the contention and that is that the Court of Appeals could reasonably have found that the evidence sought would have been cumulative and that the post-conviction court therefore properly exercised its discretion in denying Oken the right to conduct forensic testing. *Oken II,* 343 Md. at 300–01, 681 A.2d at 52.

Oken has given no reason under 28 U.S.C. § 2254(d) why the decision of the Maryland Court of Appeals should be set aside.

XII.

For all the foregoing reasons, Steven Howard Oken's Petition for Writ of Habeas Corpus will be DENIED.

*ORDER*

For the reasons stated in the foregoing Opinion, it is this 30th day of August, 1999

ORDERED that:

1) The Petition for Writ of Habeas Corpus is DENIED;

**514**

2) The Clerk is directed to MAIL copies of this Order and the foregoing Memorandum to Petitioner and to Attorney General of Maryland J. Joseph Curran, Jr.; and

3) The Clerk of Court is directed to CLOSE this case.